**Theartis ARMSTRONG, Plaintiff,**

v.

**CHRYSLER CORPORATION, and International Union of the United Automobile, Aerospace & Agricultural Implement Workers of America (UAW), Defendants.**

No. 96–CV–60251–AA.

United States District Court,
E.D. Michigan,
Southern Division.

July 10, 1997.

Michael L. Pitt, Royal Oak, MI, for Theartis Armstrong.

Gregory S. Muzingo, Maxine Graff Goodman, Chrysler Corp., Office of the General Counsel, Auburn Hills, MI, for Chrysler Corp.

Connye Y. Harper, Detroit, MI, for Defendant Union.

## ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

HACKETT, District Judge.

Plaintiff in the above-captioned case seeks injunctive relief and damages from Chrysler Corporation for wrongful termination, and from his union for failure to fairly represent him in his grievance against Chrysler. Juris-diction is based on § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. Now before the court are both defendants' motions for summary judgment. For the following reasons, defendants' motions shall be granted.

## I. FACTS

From 1969 until 1992, plaintiff Theartis Armstrong was employed by defendant Chrysler Corporation (Chrysler) as an hourly worker. During that period, plaintiff was a member of defendant United Automobile, Aerospace & Agricultural Implement Workers of America Union, Local 7 (the Union), and his employment was covered by a collective bargaining agreement (CBA) between Chrysler and the Union. In August of 1992, plaintiff was working at the Jefferson North Assembly Plant in production performing a variety of jobs.

On August 10, 1992, plaintiff was working on the assembly line securing door handles onto Jeeps. To perform this job, plaintiff was required to use an air gun, which is elevated above the line and attached to an elastic hose that allows it to stretch out and snap back into place.

While working on the job, plaintiff became involved in a verbal altercation with his team leader, co-worker Andrew Thomas. At some point, the disagreement became physical and plaintiff struck Thomas with his air gun. Afterwards, plaintiff was escorted by an area supervisor from the plant to an office where he was met by his Union steward and a labor relations representative. Plaintiff spoke with these individuals, but declined to give a written statement. Plaintiff stated:

Some how he got between me and the gun and it came down out of my hand and hit him beside his head as I was about to secure the harness in the car. My job is working inside the car and somehow he came between me and the car when the gun dropped down and hit him. It was an accident.

. . . . .

I had the air gun in my hand so I couldn't have put my hands around his neck. After he got hit in the head, I told him it was an

accident, and yea I then told him he had better leave. That's how it happened, it was an accident.

Plaintiff was then suspended pending an investigation.

The same day, Thomas signed a written statement, which read in relevant part:

Armstrong and I was discussing how the job could be improved. After we finished with the discussion of the job, he, Armstrong began to talk about how well he'd did during his off time. It was like boasting. So I made the remark that he should be thankful. And from there he began to lose his temper. [He] told me that the best thing I could do was to get my little ass from down there. After few more words, he grab my neck in a choking position. I pushed his hand away, one of the guys stepped in between us. The next thing I knew, he swung the (air gun) across and hit me across my left eye. I put my hands across my face to hold down the bleeding. While he was still being restrained by a couple of fellows. Armstrong hit me with an air gun.

The next day, Chrysler Manager Marvin Moore interviewed two witnesses to the fight. The Union steward waived his presence at the interviews. Employee Lewis Robbins, who was working next to plaintiff on the line, stated:

They were just talking so I turned to do my job, then when I turned back around I just saw him hit him like this (Employee made a 3 inch swinging motion with his hand which had in it an air motor). All of us work together and talk together. They were really just talking, sort of teasing each other. It really surprised me when it happened. There is nothing else I can tell you.

Employee Preston Martin, who also works next to plaintiff, stated:

They were discussing Armstrongs [sic] job and when I turned around Armstrong had Andy (Thomas) by the neck. What lead up to it was that Armstrong was complaining about his job, and Andy was telling him that if he was that dissatisfied why don't he become the team planner. Andy told him we can't change the whole Jeep just to satisfy your job, so why don't you become the team planner. Yea they were both cussing each other, but it was just "shop talk," no one meant any harm by it. We were all involved in the conversation. I guess Armstrong didn't like what Andy said and when I turned around Armstrong had him by the neck. That is when I got between them and I pushed Armstrong back two or three feet. They started calling each other a bunch of mother* * * * * * and we thought that was the end of it, but that is when Armstrong reached out and hit Andy with the air motor. That's all I can say on the record.

Following the investigation, plaintiff's suspension was converted to a discharge on August 12, 1992. At that point, plaintiff wrote out a statement for the Union regarding his version of the events:

I pushed out my arms trying to keep him off me holding the air gun in both of my hands in a defensive posture. He grab hold of the gun. At that time Preston, another worker grab Andrew, but in the process the air line was caught between the car and them, causing the airline to be entangle [d]. As I fell backward as my arms were extended the air gun came out of my hands striking Andrew.

On August 13, 1992, the Union filed a grievance on plaintiff's behalf. The grievance was pursued through the grievance procedure and appealed to the fourth step, which took the matter to the International Union on January 15, 1993. However, on January 19, 1995, then International Union Representative Bill Gorman withdrew the grievance, believing that plaintiff's case could not be won at arbitration. Gorman based his decision on an evaluation of the eyewitness statements, past precedent set by the Chrysler–UAW Impartial Umpire (Arbitrator) on fighting, and Chrysler's adamant refusal to reinstate plaintiff out of a concern for preventing workplace violence. Plaintiff then filed an untimely appeal of the Union's decision to withdraw his grievance, which was ultimately denied on December 5, 1995.

Next, plaintiff initiated this lawsuit claiming that (1) Chrysler violated the CBA by

terminating him without just cause, and (2) the Union breached its duty of fair representation by withdrawing his grievance, and then subsequently refusing to review the merits of the grievance. Defendants have filed separate motions for summary judgment, arguing that they are entitled to judgment as a matter of law. Because the facts and issues in both motions are interrelated, the court addresses them together in one order.

## II. *STANDARD OF REVIEW*

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See F.D.I.C. v. Alexander,* 78 F.3d 1103, 1106 (6th Cir.1996). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986); *see also Kutrom Corp. v. City of Center Line,* 979 F.2d 1171, 1174 (6th Cir.1992).

The standard for determining whether summary judgment is appropriate is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Winningham v. North Am. Resources Corp.,* 42 F.3d 981, 984 (6th Cir.1994) (citing *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir.1989)). The evidence and all inferences therefrom must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Enertech Elec., Inc. v. Mahoning County Comm'rs,* 85 F.3d 257, 259 (6th Cir.1996); *Wilson v. Stroh Cos., Inc.,* 952 F.2d 942, 945 (6th Cir.1992). "[T] he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also Hartleip v. McNeilab, Inc.,* 83 F.3d 767, 774 (6th Cir.1996).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 270, 88 S.Ct. 1575, 1583, 20 L.Ed.2d 569 (1968); *see also Adams v. Philip Morris, Inc.,* 67 F.3d 580, 583 (6th Cir.1995). Mere allegations or denials in the non-movant's pleadings will not meet this burden. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. Further, the non-moving party cannot rest on its pleadings to avoid summary judgment. It must support its claim with some probative evidence. *Kraft v. United States,* 991 F.2d 292, 296 (6th Cir.), *cert. denied,* 510 U.S. 976, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993).

## III. *DISCUSSION*

It has long been established that an employee can bring suit against his employer for breach of a CBA, *see Smith v. Evening News Ass'n,* 371 U.S. 195, 200, 83 S.Ct. 267, 270, 9 L.Ed.2d 246 (1962), but prior to doing so, he must exhaust the grievance or arbitration procedures provided for in the CBA. *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652–53, 85 S.Ct. 614, 616–17, 13 L.Ed.2d 580 (1965). Generally, the employee is bound by the results of those contractually established procedures. *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960).

Judicial review is appropriate, however, when the employer's conduct amounts to a repudiation of those contractual remedies, or when the employee has been prevented from exhausting his contractual remedies by the union's wrongful refusal to process the employee's grievance. *Vaca v. Sipes,* 386 U.S. 171, 185, 87 S.Ct. 903, 914, 17 L.Ed.2d 842

(1967). Thus, an employee may file what is known as a hybrid § 301/unfair representation suit against both the union and the employer. See, *e.g., Chrysler Workers Ass'n v. Chrysler Corp.,* 834 F.2d 573, 578 (6th Cir.1987), *cert. denied,* 486 U.S. 1033, 108 S.Ct. 2017, 100 L.Ed.2d 604 (1988). Although such a suit essentially consists of two separate causes of action—one against the employer for breach of the CBA pursuant to § 301 of the LMRA, 29 U.S.C. § 185, and the other against the union for breach of its duty of fair representation, implied in § 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a)—the claims are inextricably interdependent. *Id.* at 582–83.

In order for a plaintiff to prevail against either his employer or the union, he must show that the employer's action was contrary to the CEA and that the union breached its duty of fair representation. *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 570–71, 96 S.Ct. 1048, 1059–60, 47 L.Ed.2d 231 (1976). Should the plaintiff fail to demonstrate both violations, he cannot succeed against either party, and his hybrid § 301 claim will be dismissed.

### A. Claim for Breach of Duty of Fair Representation

As the exclusive bargaining representative of the employees in plaintiff's bargaining unit, the Union had "a statutory duty fairly to represent all of those employees, both in its collective bargaining with [Chrysler] ..., and in its enforcement of the resulting collective bargaining agreement." *Vaca,* 386 U.S. at 177, 87 S.Ct. at 909–10. However, "[a] breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Id.* at 190, 87 S.Ct. at 916. In other words, a breach of the duty cannot be established merely by proof that the underlying grievance was meritorious. *Id.* at 195, 87 S.Ct. at 919.

The Supreme Court has held that a union's actions are arbitrary only if its behavior is so far outside a "wide range of reasonableness"

as to be irrational. *Air Line Pilots Ass'n Int'l v. O'Neill,* 499 U.S. 65, 67, 111 S.Ct. 1127, 1129–30, 113 L.Ed.2d 51 (1991) When a union handles a grievance in a "perfunctory" manner, "with caprice or without rational explanation," its conduct may be sufficiently arbitrary to establish a breach of its duty to fairly represent its members. *Poole v. Budd Co.,* 706 F.2d 181, 183 (6th Cir.1983). Gross mistake or inaction which cannot be rationally explained may also constitute a breach of the duty. *Id.* at 184. While the employee need not necessarily show bad faith, mere negligence or mistaken judgment is not sufficient to establish a breach of the union's duty. *Id.* at 183. However, a showing of bad faith is required to show breach of the duty where the union has made a decision that the employee's grievance was without merit. *Ruzicka v. General Motors Corp.,* 649 F.2d 1207, 1212 (6th Cir.1981).

In the present case, plaintiff first alleges that the Union breached its duty of fair representation by withdrawing his grievance and by failing "to competently investigate the facts and circumstances which would have demonstrated that plaintiff was involved with the altercation with the coworker at the instigation of the coworker, and that plaintiff's actions were in self defense against an aggressive and angry individual."[1] Plaintiff contends that the Union's conduct was arbitrary, capricious, grossly negligent, and devoid of rational basis.

"To comply with its duty, a union must conduct some minimal investigation of grievances brought to its attention." *Tenorio v. NLRB,* 680 F.2d 598, 601 (9th Cir. 1982). Here, the Union reviewed the victim's and the two eyewitnesses' statements which all indicated that plaintiff had one of his hands around the victim's neck, showing intentional conduct, and that plaintiff purposefully struck his co-worker. None of those parties stated that the victim physically provoked plaintiff, or intimated that plaintiff could have been acting in self defense. The only evidence to the contrary is plaintiff's own version of the events. Nothing suggests

---

**1.** Plaintiff's complaint also alleges a breach of the duty of fair representation based on retaliation for plaintiff's having filed an NLRB charge; however, plaintiff has withdrawn that claim.

that the Union did not consider plaintiff's statement; rather, the Union's investigation revealed that the victim's account, corroborated by two uninterested parties, was more believable than plaintiff's self-serving attempt to exonerate himself.

■ The circumstances of this case do not indicate that the Union's investigation of plaintiff's grievance was arbitrary, irrational, or perfunctory. Plaintiff has come forward with no proof that the Union departed from its established policies and procedures regarding the investigation of grievances. The Union was under no obligation to personally interview every witness to the incident. Furthermore, it is unlikely that a more thorough investigation would have resulted in a different outcome considering that the deposition testimony of the victim and one of the eyewitnesses[2] supports their original statements. Nevertheless, because the record before the Union included statements made by the victim, the accused, and two unbiased eyewitnesses within a day of the incident, the Union had a legitimate basis for processing plaintiff's grievance as it did.

■ As to plaintiff's claim based upon the Union's withdrawal of his grievance, plaintiff must make a showing of bad faith because the Union decided that his case lacked merit. Plaintiff has failed to meet this burden. Plaintiff only argues the merits of the underlying grievance, rather than the fact of any arbitrariness or bad faith on the part of the Union. However, plaintiff had no absolute right to have his grievance arbitrated. *Vaca*, 386 U.S. at 191, 87 S.Ct. at 917. After reviewing the witness statements, researching prior arbitration decisions on fighting, and considering Chrysler's adamant refusal to reinstate plaintiff due to its concern for preventing workplace violence, the Union rationally determined that plaintiff's case was not winnable in arbitration. The Union's decision not to pursue a grievance it perceived as futile was neither arbitrary, discriminatory, nor in bad faith.

■ Next, plaintiff contends that the Union "unreasonably delayed in the processing of plaintiff's grievance, depriving plaintiff of any reasonable opportunity of demonstrating the merits of his grievance." Presumably, plaintiff refers to the fact that although his grievance was appealed through the fourth step of the process on January 15, 1993, he heard nothing further until his grievance was withdrawn on January 19, 1995. However, the length of time the Union took to process plaintiff's grievance is not per se unreasonable. Plaintiff has submitted no proof that the Union typically processes other grievances faster than his, or that the Union acted with bad faith. Moreover, nothing suggests that the passage of time affected the ultimate disposition of plaintiff's grievance. Therefore, the Union did not arbitrarily, unreasonably, or irrationally delay in the processing of plaintiff's grievance.

■ Plaintiff's final claim for breach of the duty of fair representation is based upon the Union's refusal to review the merits of his grievance on appeal. After he was notified by letter dated March 1, 1995, that the Union had withdrawn his grievance, plaintiff appealed the withdrawal to the International Executive Board (IEB) on April 17, 1995. Plaintiff also requested an extension of time because the Union's internal appeals procedure contains a jurisdictional time limit requiring appeals to the IEB to be filed within 30 calendar days after notice of the decision being appealed. However, the IEB rejected plaintiff's appeal as untimely on its face.

Plaintiff then appealed the IEB's refusal to consider his appeal, explaining that although he received notice of the Union's withdrawal of his grievance in early March of 1995, he believed that his attorney would also be directly informed by the Union of its decision, and only discovered in April of 1995 that his attorney had not been notified. Thus, plaintiff argues that his appeal was filed as soon as his counsel was made aware of the need to do so.

On August 7, 1995, the IEB upheld its prior determination of untimeliness, stating that the Union was under no obligation to notify plaintiff's counsel that his grievance had been withdrawn. Lastly, plaintiff appealed the IEB's decision to the Convention

2. The other eyewitness was not deposed.

Appeals Committee (CAC), which ultimately upheld the IEB's decision on December 7, 1995.

Notwithstanding plaintiff's obvious dissatisfaction with the Union's disposition of his grievance, he has failed to explain how the Union breached its duty of fair representation by refusing to review the merits of his grievance on appeal. Plaintiff has not alleged any facts to support a finding that the Union did not consider his request for an extension, acted unreasonably, or that his appeal was treated differently than other untimely appeals. Rather, the record includes evidence that untimely appeals are routinely rejected. Accordingly, the Union's refusal to consider plaintiff's untimely appeal was neither arbitrary, capricious, grossly negligent, nor devoid of any rational basis. In light of all the above considerations, the court finds that the Union's handling of plaintiff's grievance was not so inadequate, nor does it show such an egregious disregard for plaintiff's rights as to constitute a breach of the duty of fair representation.

### B. *Claim for Breach of Collective Bargaining Agreement*

█ In addition to plaintiff's inability to establish that the Union breached its duty of fair representation, plaintiff has also failed to establish that Chrysler breached the CBA by terminating his employment without just cause. Chrysler discharged plaintiff for "assault and inflicting bodily harm to a fellow employee" in contravention of its Standards of Conduct, which provide in relevant part:

> The Standards of Conduct apply to everyone at Chrysler. If any standard is violated, Chrysler will take disciplinary action— up to and including discharge.
>
> Any of the following actions during your employment with Chrysler would violate the Standards of Conduct:
>
> 15. Fighting, "horseplay" or other disorderly, disruptive or unruly conduct.

Relying on the statements made by plaintiff, the victim, and the two unbiased eyewitnesses to the incident, Chrysler reasonably determined that plaintiff engaged in prohibited conduct by purposefully swinging an air gun at a co-worker, striking him in the head

and injuring him. Because it is Chrysler's policy to discharge employees for fighting in an effort to keep its workplace safe, Chrysler appropriately discharged plaintiff for cause. Accordingly, plaintiff has failed to prove his claim that Chrysler violated the CBA.

### IV. *CONCLUSION*

For the reasons stated above, defendants' motions for summary judgment hereby are GRANTED.

SO ORDERED.