DECISION
Before this Court are defendants' motions for summary judgment under Rule 56 of the Rhode Island Rules of Civil Procedure. The defendants are members of the Barrington School Committee (Committee), in their official capacity as members of that Committee, Kenneth Pearson, in his official capacity as President of the United Steel Workers of America, Local # 12971 (Union), and Albertus Trevail in his official capacity as Secretary of the Union. Plaintiffs are Alan MacQuattie and Robert Sousa who were formerly employed as custodians at the Barrington Middle School and were also members of the Union. Plaintiffs have brought this hybrid action alleging that the Committee has engaged in unfair labor practices in violation of G.L. 1956 § 28-7-13 and that the Union has unfairly represented the plaintiffs in violation of the collective bargaining agreement.
 Facts/Travel
The following facts are before the Court. Plaintiffs, Alan MacQuattie and Robert Sousa, were employed as custodians in the Barrington Middle School where they worked along with a third custodian, Philip Kennally, on the evening shift from 3:00 p.m. to 11:00 p.m. Plaintiffs eventually became members of the Union.
In 1994, the School Department began requiring these three custodians to complete job performance checklists. These checklists were used to evaluate the evening custodians work. Plaintiffs and Kennally were the only custodians in the Barrington school system required to complete the checklists.[1] The evaluations were conducted by the day shift custodians, Joseph Koger, plaintiffs' supervisor, and Kenneth Pearson, the Union President. Prior to instituting this policy, plaintiffs allege that they had a hostile relationship with Koger and Pearson. Presumably, this hostility stemmed, in part, from both plaintiffs having received negative job performance reviews from Koger in the past. Plaintiffs filed a grievance with the Union complaining about the use of performance checklists to evaluate their work. The Union refused to pursue the grievance with the Committee because it felt that performance checklists were a fair means of evaluating the evening custodians' work given the fact that there was no supervisor working the evening shift. See Appendix A-Barrington School Committee and United Steelworkers Agreement, Article III, Grievance Procedures.
The Union, however, has initiated other grievances on plaintiffs' behalf Initially, the Union grieved plaintiffs' performance evaluations by Koger and another supervisor in 1993. The Union claimed that their performance evaluations were improper, but the Committee denied the grievance. Plaintiffs filed a grievance in 1994 regarding improper distribution of five vacation days that should have carried over from one year to the next. After the Union took the grievance to arbitration, the arbitrator awarded plaintiffs the vacation days they requested to be forwarded to the following calendar year. Additionally, plaintiffs filed a grievance against the Committee in 1995 for improper distribution of overtime hours. The Committee determined that MacQuattie was unfairly charged with a loss of eight hours of overtime, but there was no error in calculating loss of overtime hours for Sousa. As a result of it's decision, the Committee awarded MacQuattie a monetary payment to settle the grievance.
In March 1995, the Barrington School Superintendent, Ralph Malafronte, informed plaintiffs that the School Committee would consider their termination at an April 6, 1995 Committee meeting. The basis of termination would be plaintiffs' poor ratings on the job performance checklists. Upon learning of the termination proceedings, plaintiffs filed the instant complaint alleging that the Committee engaged in unfair labor practices violating G.L. 1956 § 28-7-13. They also allege that the Committee improperly delegated overtime hours in violation of the collective bargaining agreement, and the Committee failed to adequately provide an administrative remedy by not following the proper administrative procedure in response to plaintiffs' grievance. Finally, plaintiffs allege that the Union improperly and inadequately pursued plaintiffs' grievances which constituted unfair representation. Plaintiffs also sought a temporary restraining order to prevent the hearing from going forward. The restraining order was denied, and plaintiffs' employment was terminated. Though the Union did not provide representation at the hearing, it subsequently filed a grievance on plaintiffs' behalf after their termination. That grievance went to arbitration but was denied.
All defendants now move for summary judgment.
 Summary Judgment
"Summary judgment is a proceeding in which the proponent must demonstrate by affidavits, depositions, pleadings and other documentary matter . . . that he or she is entitled to judgment as a matter of law and that there are no genuine issues of material fact." Palmisciano v. Burrillville Racing Association,603 A.2d 317, 320 (R.I. 1992) (citing Steinberg v. State,427 A.2d 338 (R.I. 1981); Ludwig v. Kowal, 419 A.2d 297 (R.I. 1980)); Super. Ct. R. Civ. P. Rule 56 (c). During a summary judgment proceeding "the court does not pass upon the weight or credibility of the evidence but must consider the affidavits and other pleadings in a light most favorable to the party opposing the motion." Id. (citing Lennon v. MacGregor, 423 A.2d 820 (R.I. 1980)). Moreover, "the trial justice must look for factual issues, not determine them. The justice's only function is to determine whether there are any issues involving material facts."Id. (quoting Steinberg v. State, supra at 340). The Court's purpose during the summary judgment procedure is issue finding, not issue determination. Industrial National Bank v. Peloso,121 R.I. 305, 397 A.2d 1312, 1313 (1979) (citing O'Connor v. McKanna, 116 R.I 627, 359 A.2d 350 (1976); Slefkin v. Tarkomian,103 R.I. 495, 238 A.2d 742 (R.I. 1968)). Thus, the only task of a trial justice in ruling on a summary judgment motion is to determine whether there is a genuine issue concerning any material fact.Id. (citing Rhode Island Hospital Trust National Bank v. Boiteau,119 R.I. 64, 376 A.2d 323 (R.I. 1977)).
"When an examination of the pleadings, affidavits, admissions, answers to interrogatories and other similar matters, viewed in the light most favorable to the party opposing the motion, reveals no such issue, the suit is ripe for summary judgment." Id. (citing Rhode Island Hospital Trust National Bankv. Boiteau, supra; O'Connor v. McKanna, supra.) "[T]he opposing parties will not be allowed to rely upon mere allegations or denials in their pleadings. Rather, by affidavits or otherwise they have an affirmative duty to set forth specific facts showing that there is a genuine issue of material fact." Bourg v. BristolBoat Co., 705 A.2d 969, 971 (R.I. 1998) (citing St. Paul Fire Marine Insurance Co. v. Russo Brothers, Inc., 641 A.2d 1297, 1299 (R.I. 1994); Super. Ct. R. Civ. P. Rule 56 (e)). It is not an absolute requirement, however, that the nonmoving party file an affidavit opposing the motion. Steinberg v. State, supra. Seealso Sullivan v. Town of Coventry, 707 A.2d 257 (R.I. 1998). If the affidavit of the moving party does not establish the absence of a material factual issue, the trial justice should deny the motion despite the failure of the nonmoving party to file a counter-affidavit. Id.
 Hybrid Cause of Action
Plaintiffs in this case have initiated what courts have described as a hybrid cause of action. This case is considered a hybrid action because plaintiffs allege both that the Committee has violated the collective bargaining agreement, thus engaging in unfair labor practices under G.L. 1956 § 28-7-13, and that the Union has unfairly represented plaintiffs by not pursuing plaintiffs grievance that the job performance checklists were improperly used to evaluate their work. This action is analogous to a hybrid action for unfair representation and an action for unfair labor practices under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. In analyzing this case, the Court is persuaded by federal case law in the area of labor law and relations because Rhode Island's labor relations laws parallel the federal laws in many significant ways. Belanger v.Matteson, 115 R.I. 332, 346 A.2d 124 (1975) (citing Vaca v.Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967);Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953); Steele v. Louisville Nashville R.R.,323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944)).
It is well established that before an employee can bring suit against an employer for breach of a collective bargaining agreement, the employee must first exhaust administrative remedies. DelCostello v. International Brotherhood of Teamsters,462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); Vaca v.Sipes, 386 U.S. at 184-85, 87 S.Ct. at 913-14, 17 L.Ed.2d at 854;Armstrong v. Chrysler Corp., 972 F. Supp. 1085, 1088 (E.D. Mich. 1997). The United States Supreme Court in Vaca set forth certain exceptions in a hybrid cause of action where an employee may seek judicial review of an employer's conduct for a breach of contract and a union's breach of fair representation. First, an employee should not be required to exhaust administrative remedies when the employer's conduct amounts to a repudiation of the contractual procedures. Vaca, 386 U.S. at 185, 87 S.Ct. at 914, 17 L.Ed.2d at 855; See also Aldrich v. Rhode Island Council 94,American Federation of State, County, and Municipal Employees, 93-1701 at 4 (R.I. Superior 1997). Second, an employee may also seek judicial enforcement of his contractual rights when the union has the sole power to invoke higher stages of the grievance procedure, and the employee has been prevented from exhausting his contractual remedies. Id.
If the Court finds that plaintiffs do not have to exhaust administrative remedies and that this Court has jurisdiction to hear plaintiffs' claims, then the Court must determine if a genuine issue of material fact exists surrounding both of plaintiffs' claims. The Court is mindful that while the breach of contract and the unfair representation claims are two distinct causes of action, they are inextricably intertwined. DelCostello, 462 U.S. at 164-65, 103 S.Ct. at 2291, 76 L.Ed.2d at 489;Armstrong, 972 F. Supp. at 1089. Plaintiffs may only prevail against either the Committee or the Union, if plaintiffs are able to show both that the Committee's conduct constituted unfair labor practices in contravention of the collective bargaining agreement, and that the Union breached it's duty of fair representation. DelCostello, 462 U.S. at 165, 103 S.Ct. at 2291, 76 L.Ed.2d at 489; Vaca, 386 U.S. at 185, 87 S.Ct. at 914, 17 L.Ed.2d at 855; Armstrong, 972 F. Supp. at 1089. Plaintiffs failure to demonstrate both violations means that plaintiffs may not succeed against either party. Armstrong, 972 F. Supp. at 1089.
 Exhaustion of Administrative Remedies
Unfair labor practices claims are normally brought before the State Labor Relations Board. G.L. 1956 § 28-7-21. Section28-7-21 regarding complaints of unfair labor practices states, in pertinent part, that
 Whenever a charge has been made that any employer . . . has engaged in or is engaging in any unfair labor practice, the board shall have power to issue and cause to be served upon the party a complaint stating the charges in that respect and containing a notice of hearing before the board at a place therein fixed to be held not less than seven (7) days after the serving of the complaint.
Our Supreme Court has made it clear that exclusive jurisdiction for a claim of unfair labor practices rests with the State Labor Relations Board. See Patton v. Poirier, 109 R.I. 401,286 A.2d 243 (1972) (holding that State Labor Relations Board had exclusive initial jurisdiction where plaintiffs had charged the school committee with engaging in unfair labor practices under the Municipal Employee's' Arbitration Act, and Superior Court had no jurisdiction to issue an injunction until plaintiffs had exhausted all available administrative remedies, even though school committee had discharged custodians while proceedings were pending before Board). A party aggrieved by the Board's final decision may then seek judicial review of that decision pursuant to G.L. 1956 § 28-7-29. Section 28-7-29 states, in pertinent part, that
 Any person aggrieved by a final decision of the board, or a final order of the board, granting or denying in whole or in part the relief sought may obtain a review of the final decision or final order in the superior court of the county where the unfair labor practice in question was alleged to have been engaged in or wherein the person resides or transacts business, by filing in the superior court, within thirty (30) days after the final decision or final order is given by the board, a complaint requesting that the final decision or final order of the board be modified or set aside, or if the court be on vacation or in recess, then to the superior court of any county adjoining the county wherein the unfair labor practice in question occurred or wherein the person resides or transacts business.
Judicial review of the Board's decision under § 28-7-29
is an administrative appeal within the guidelines of the Administrative Procedures Act. See G.L. 1956 § 42-35-15.
Plaintiffs argue that they are unable to exhaust the proscribed administrative remedies because the Committee and the Union have failed to follow the proper procedures provided in the collective bargaining agreement. Most significantly, plaintiffs point to a letter dated February 21, 1995 that was sent to plaintiffs' counsel by William Kennedy, the Union's Subdistrict Director. That letter clearly indicates that the Union is the exclusive bargaining agent for it's members, and plaintiffs' attorney has "no right to represent any member of the Steelworkers" pursuant to the collective bargaining agreement. The plain language of Article III of the collective bargaining agreement indicates that any Union member or the Union can initiate the grievance procedure. Though Article I, Section 1 states that the Union has exclusive representation for the purposes of negotiation, the Agreement does not prohibit an attorney from representing a Union member when the member files a grievance.
The February 21, 1995 letter demonstrates that the Union has acted in contravention of the Agreement. These facts illustrate how hybrid unfair labor practices/unfair representation actions are "inextricably intertwined." Plaintiffs' claim for unfair labor practices is based on the fact that the Union failed to pursue plaintiffs' grievance challenging the improper use of performance checklists. By not allowing plaintiffs to pursue their grievance independently of the Union, the Union essentially repudiated the collective bargaining agreement. Therefore, this case falls within the exhaustion of remedies exceptions set forth in Vaca and is properly before the Court.
 Unfair Labor Practices
Unfair labor practices in Rhode Island are governed by G.L. 1956 § 28-7-13. This statute provides, in pertinent part, that
It shall be an unfair labor practice for an employer:
 (8) To discharge or otherwise discriminate against an employee because he or she has signed or filed any affidavit, petition, or complaint or given any information or testimony under this chapter.
Plaintiffs allege in their Amended Complaint that the Committee engaged in unfair labor practices under § 28-7-13 by terminating plaintiffs for filing a grievance protesting the use of the performance checklists. Plaintiffs' Amended Complaint Count I ¶ 11. Though plaintiffs sought to file a grievance regarding the checklists with the Union, ultimately, the grievance was never filed with the Committee because the Union decided that the grievance was without merit. Plaintiffs have not brought forth any evidence indicating that the Committee terminated plaintiffs' employment because of a grievance in connection with the checklists. Plaintiffs' mere allegations are insufficient to defeat a motion for summary judgment. Bourg v.Bristol Boat Co., 705 A.2d 969, 971 (R.I. 1998). Therefore, the Court finds that there is no genuine issue of material fact indicating that the Committee violated § 28-7-13.
 Union's Duty of Fair Representation
The duty a union owes to it's members has been discussed at length by our Supreme Court in Belanger v. Matteson,115 R.I. 332, 346 A.2d 124 (1975). The standard for measuring a union's duty to it's members is heavily influenced by federal case law.Belanger, 115 R.I. at 338, 346 A.2d at 129 (relying on and applying standards set forth in several United States Supreme Court cases, including, Vaca and Steele v. Louisville NashvilleR.R., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944)).
A union does have the duty to be an advocate for it's members.Belanger, 115 R.I. at 339, 346 A.2d at 129. The duty of fair representation is imposed upon the Union in handling employee grievances. Belanger, 115 R.I. at 341, 346 A.2d at 130-31. When faced with an employee grievance, a union "must often take a position detrimental to some employees, but helpful to others. The duty upon the Union here is to `* * * in good faith and in a nonarbitrary manner, make decisions as to the merits of particular grievances', [citation omitted], and, if it decides to pursue a grievance, it must not do so in a perfunctory manner."Belanger, 115 R.I. at 341, 346 A.2d at 131 (citing Vaca, 386 U.S. at 194, 87 S.Ct. at 919, 17 L.Ed.2d at 860). The Union is in clear breach of it's duty of fair representation if it makes a decision affecting it's members without investigating the underlying factual situation. Belanger, 115 R.I. at 344, 346 A.2d at 132 (citing De Arroyo v. Sindicato De TrabajadoresPackinghouse, AFL-CIO, 425 F.2d 281 (1st Cir. 1970). UnderBelanger, the Court will focus on three factors in examining the Union's conduct in it's discharge of it's duty to these plaintiffs: (1) the union's motives; (2) it's decision-making procedures; and (3) the reasons for its acting as it did. Belanger, 115 R.I. at 344, 346 A.2d at 132. In Belanger, plaintiff was awarded a position as head of the Business Department at a Warwick high school over defendant Matteson. Matteson then filed a grievance with the union which ultimately lead to arbitration and the job being awarded to Matteson. Belanger then filed a grievance with the union, but the union refused to ask for Belanger's reinstatement because that would effectively reverse a decision resulting from another union grievance. The undisputed testimony indicated that throughout the grievance procedure, the Union and it's representatives acted without ever contacting Belanger or considering his qualifications for the position; that the Union aligned itself with Matteson in seeking Belanger's removal; and that at the arbitration hearing the union representatives attempted to demonstrate that Matteson, rather than Belanger, was entitled to the position. The Court found that the union never offered Belanger an opportunity to present his case to it. The Court also found a clear breach by the union of the duty it owed to Belanger. Despite this, the Court held that there was no bad faith on the union's behalf.
Plaintiffs, in this case, argue that the Union unfairly represented them because the Union took no action on plaintiff's grievance challenging the performance checklists. Plaintiffs rely heavily on the deposition testimony of former Union President Stephen Pannone who discusses the interpersonal problems that existed between plaintiffs and Koger and Pearson. This personal animosity, in plaintiffs view, provides sufficient evidence that the Union may have acted in bad faith.
Plaintiffs' argument is unpersuasive. Like Belanger, plaintiffs, in this case, are unable to demonstrate that the Union acted in an arbitrary manner with bad faith towards plaintiffs. Though the Union did not pursue plaintiffs grievance protesting the job performance checklists, and plaintiffs low scores ultimately resulted in their termination, this does not result in per se unfair representation. To raise a genuine issue of material fact, plaintiffs must bring forth some affirmative evidence that the Union's decision not to pursue that grievance was arbitrary.
The checklists did not apply solely to plaintiffs. The third night custodian, Philip Kennally, was also subject to the job performance checklists. The facts indicate that the checklists were necessary because there was no one to supervise the three night custodians work. Furthermore, the checklists were necessary because school administrators complained about the quality of work performed by the night custodians. The completion of the checklists in an effort to improve work performance is neither unreasonable nor arbitrary. It should also be noted that at one point, the School Department attempted to have all custodians use performance checklists, but this did not occur. See Pannone Deposition at 38. Additionally, the Union had pursued other grievances on plaintiffs behalf including a grievance filed by the Union protesting plaintiffs' termination by the Committee. Therefore, plaintiffs have not demonstrated that there is a genuine issue of material fact that the Union unfairly represented plaintiffs.
After a review of all the facts, pleadings, depositions, and all other relevant documents submitted to this Court and after reviewing that evidence in the light most favorable to plaintiffs, the nonmoving party, the Court concludes that there are no genuine issues of material fact, and summary judgment shall enter in favor of both defendants.
Counsel shall prepare the appropriate judgment for entry.
 APPENDIX A ARTICLE III GRIEVANCE PROCEDURE
SECTION 1. The purpose of the following grievance procedure shall be to settle equitably at the lowest possible administrative level issues which may arise from time to time with respect to interpretation and/or application of this agreement. The Committee and the Union agree that these proceedings shall be kept as informal and confidential as may be appropriate at any level of the procedure. Grievances shall, in all cases, be presented in writing in not less than duplicate form, and shall be signed by the aggrieved employee. In the event that a grievance affects a group or class of employees, hereinafter called a general grievance, the Union may present the grievance.
SECTION 2. An employee with a grievance, or the Union in the case of a general grievance, shall first discuss it with his/her appropriate supervisor, either directly or with a union representative, with the objective of resolving the matter informally. The supervisors written disposition shall be returned to the employee and his/her representative, or the Union in the case of a general grievance, within three (3) working days of the presentation.
LEVEL 2. In the event a satisfactory settlement is not reached following the third (3rd) day as provided for a level 1, an aggrieved employee or his/her representative, or the Union in the case of a general grievance, may, within five (5) additional working days, present the grievance to the superintendent of schools or his/her representative. The latter shall grant a hearing to the aggrieved and/or his/her representative within ten (10) working days of the presentation and return his/her written disposition within ten (10) working days after the hearing.
LEVEL 3. In the event a satisfactory settlement is not reached following the tenth (10th) working day after the hearing, as provided for in level 2, an employee and his/her representative or the Union in the ease of a general grievance, may, within five (5) additional working days, present the grievance to the School Committee. The School Committee shall grant a hearing to the aggrieved employee, or the Union in the case of a general grievance, with the steward accompanied by an international representative and may also be accompanied by the regional director within twenty (20) working days of the presentation to the committee. The Committee shall render within twenty (20) working days of such hearing a written disposition to the aggrieved employee and his/her representative or the Union in the case of a general grievance.
LEVEL 4. All grievances which are not disposed of in level 1, 2 and 3 shall, if demanded in writing within thirty (30) calendar days after the answer of level 3, be disposed of by arbitration in the following manner:
 (1) The grieving party shall, after so notifying the committee, refer the issue to the American Arbitration Association.
 (2) The arbitrator shall be selected by the American Arbitration Association in accordance with it's rules.
 (3) The arbitrator shall not be empowered to make any decisions amending, modifying, adding to or subtracting from the provisions of this agreement.
 (4) The Committee and the Union shall share equally the compensation and the expenses of the arbitrator.
SECTION 3. A grievance must be initiated within five (5) working days of the occurrence of the cause for complaint or if neither the aggrieved employee nor the Union had knowledge of said occurrence at the time of it's happening, then within five (5) working days of the first such knowledge by either the aggrieved employee or the Union. Any grievance not filed or appealed to a higher level within the time limits provided for in this agreement, shall be conclusively waived by reason of failure to process within the time limits provided.
SECTION 4. When it is necessary for a union steward and aggrieved employee to attend a grievance meeting or hearing during his/her normally scheduled work hours, he/she shall, upon notice to his/her supervisor, be released without loss of pay for the time required to attend the grievance meeting or hearing.
[1] At one point, however, an unsuccessful attempt was made to have all custodians in the school system use performance checklists. See Pannone Deposition at 38.