**Bernice ORTIZ, Plaintiff,**

v.

**Edward V. REGAN, as Comptroller of the State of New York and as Trustee of the New York State and Local Retirement Systems, the New York State and Local Retirement Systems, Gregory O. Childs, personally and as Director, Retirement Benefits of the New York State and Local Retirement Systems, and Jane A. O'Connor, personally and as Assistant Director of the Retirement Benefits Bureau of the New York State and Local Retirement Systems, Defendants.**

No. 90 Civ. 1609 (MBM).

United States District Court,
S.D. New York.

Aug. 1, 1991.

See also 749 F.Supp. 1254.

Anthony Feldmesser, Bronx Legal Services Office of the Elderly, Bronx, N.Y., Jonathan A. Weiss, Legal Services for the Elderly, New York City, for plaintiff.

Robert Abrams, Atty. Gen., State of N.Y., New York City (Clement J. Colucci,

Asst. Atty. Gen., of counsel), for defendants.

## OPINION AND ORDER

MUKASEY, District Judge.

Plaintiff Bernice Ortiz is a New York State and Local Retirement Systems (NYSLRS) pensioner who claims that she was born November 7, 1925 and is entitled to a pension based on that birth date. Even though NYSLRS had apparently resolved a discrepancy in their file and accepted the correctness of the 1925 birth date before she retired, the agency suspended her benefits in September 1989 on the supposition that her actual birth date was September 10, 1932. After NYSLRS failed to pay any retirement benefits for over five months, plaintiff's pension ultimately was restored, but at an amount based on the 1932 birth date.

In this action, under 42 U.S.C. § 1983, she claims that defendants NYSLRS and Edward V. Regan have deprived and continue to deprive her of property without due process of law by arbitrarily suspending and later reducing her monthly retirement benefits without notice and without an opportunity to challenge the action. Plaintiff also alleges that the failure of NYSLRS and Regan to adopt rules and regulations to prevent the wrongful termination or reduction of retirement benefits has deprived and will continue to deprive her of property without due process of law. Finally, Ortiz alleges that NYSLRS and Regan breached their fiduciary duties and violated her state constitutional rights and that defendants Childs and O'Connor violated her rights under the state and federal constitutions in their personal capacities. In her prayer for relief, plaintiff seeks an injunction ordering defendants to pay benefits based on the 1925 birth date, a money judgment for all back benefits that she should have received along with interest, punitive damages against Childs and O'Connor, and attorney's fees.

In an earlier opinion and order, I denied defendants' motion to dismiss the complaint and held that plaintiff stated a claim under § 1983 when she alleged that defendants violated her procedural due process rights by suspending her advance retirement benefits without notice or a hearing. *Ortiz v. Regan,* 749 F.Supp. 1254 (S.D.N.Y.1990). I found also that the notice sent to plaintiff in February 1990— when her pension was restored and she began to receive regular retirement benefits—was constitutionally defective in that it failed to inform her of the basis upon which her regular benefit was calculated and the availability of an administrative procedure to challenge the calculation. *Id.* at 1263. Accordingly, I rejected defendants' argument that the only process due Ortiz was an administrative hearing under New York State Retirement & Social Security Law § 74(d) (McKinney's 1987) within four months of the date she began receiving regular retirement benefits. *Id.* Plaintiff now moves for summary judgment. As set forth below, the motion is granted.

## I.

Defendants do not challenge plaintiff's allegation that her benefits were suspended without any pre-deprivation hearing. *See* Plaintiff's 3(g) Statement ¶¶ 10–12; Defendants' 3(g) Statement. Rather, the only material issue of fact raised by their submissions is whether Ortiz's actual birth date was September 10, 1932 or November 7, 1925. That factual dispute is irrelevant to plaintiff's procedural due process claim and ignores the substance of the earlier opinion in this case. The federal issue in this case is not the date of Ortiz's birth, but the process, or lack thereof, by which defendants suspended her advance retirement benefits in September 1989 without providing any prior notice or opportunity to respond. Although defendants may deny Ortiz benefits to which she is not entitled, they may not suspend or reduce benefits she is already receiving without providing a constitutionally adequate pre-deprivation hearing. *See Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 984, 108 L.Ed.2d 100 (1990); *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

As explained in my earlier opinion and order, Ortiz was constitutionally entitled at least to minimal notice and opportunity to respond when officials at NYSLRS decided to suspend her monthly advance retirement benefits. When Ortiz retired in May 1989, she was under the impression that NYSLRS had resolved in her favor a discrepancy between the birth date that she had provided in her original application for membership in the pension plan—September 10, 1932—and documentary evidence that she provided to NYSLRS shortly before retiring in which she indicated that her birth date was actually November 7, 1925. The advance retirement benefits, which Ortiz began receiving in June 1989, were intended to provide, as stated in a letter that accompanied the first advance, "month-ly.... income during the period required to compile all the data necessary to accurately compute" the regular retirement benefit to which she was entitled. Complaint Exh. E.

The incident that apparently prompted the suspension of these monthly advances was NYSLRS's receipt of a letter in August 1989, purportedly from Ortiz, informing the agency that her birth date was September 10, 1932. Ortiz alleges that her landlord forged that letter in an effort to harass her and force her to vacate her rent-controlled apartment. Complaint ¶ 38. NYSLRS also had received a letter in July 1989 in which a "Mr. Romanovsky," a "Concerned Citizen," alleged that Ortiz was "ripping off the Retirement Plan" and had impersonated a relative in order to misrepresent her birth date. Childs Aff., Exh. 10. Another "concerned citizen," possibly the same person, anonymously repeated similar allegations in a letter sent to NYSLRS in November 1989. Childs Aff., Exh. 18.

Upon receiving the July and August 1989 letters, NYSLRS officials decided to suspend plaintiff's advance retirement benefits pending an investigation. However, prior to the suspension, defendants failed to provide plaintiff with notice or any opportunity to challenge the proposed action or respond to the allegations made against her. In fact, Ortiz learned that her benefits had been suspended only after the expected September 1989 check failed to arrive and only after she herself contacted NYSLRS for an explanation and was given, as she wrote later, the "run-around" from NYSLRS employees. I might add that the initial explanation was, simply, that NYSLRS stopped her benefits intentionally; it took her own letter to a NYSLRS official for Ortiz to learn—in October—that her benefits had been stopped because of a discrepancy as to her birth date.

As discussed in my earlier opinion and order, Ortiz spent the next five months attempting to comply with defendants' confusing and contradictory requests for documentation of her birth date. However, she received no benefits during that period. Meanwhile, although Ortiz requested a copy of the August 1989 letter in October, NYSLRS did not provide a copy until January 1990, and only after she repeated her earlier request. Finally, on February 9, 1990, Ortiz received her first "monthly" advance retirement benefit since August 1989. One week later she began receiving regular monthly retirement benefits, albeit based on the 1932 birth date. It is unclear from the parties' submissions whether Ortiz ever received a copy of the July 1989 letter in which a "concerned citizen" essentially accused her of defrauding NYSLRS—or whether she was even aware of its existence—until she commenced her suit in February 1990.

Defendants have not denied that they failed to provide plaintiff with notice or any opportunity to respond to their confusion about her birth date before they suspended her advance retirement benefits. Significantly, defendants chose to cut off *all* benefits without notice and without explanation even though her entitlement to some retirement benefit was never in doubt and even though the difference between the monthly advance retirement benefit and the monthly regular benefit which NYSLRS eventually calculated using the 1932 birth date amounted to only $1.01 per month. "The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement."

*Cleveland Bd. of Education v. Louder-mill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985).

As I stated in my earlier opinion and order, plaintiff "got far less than due process; she got virtually no process, and the process she did get was ... a run-around." 749 F.Supp. at 1260. Defendants contend that it was permissible to "suspend" plaintiff's advance retirement benefits because she failed to comply with "Retirement System policy concerning proof of date of birth," Childs Aff. ¶ 20, and also because her retirement application contained a statement that "Proof of your date of birth is required before a benefit can be paid." Childs Aff., Exh. 9. However, that argument provides only a possible ground for denying regular benefits based upon the 1925 birth date, not for terminating, completely and without notice or opportunity to respond, advance retirement benefits she was already receiving. Because defendants have not "set forth specific facts showing that there is a genuine issue for trial," plaintiff is entitled to judgment as a matter of law on her federal procedural due process claims. Fed.R.Civ.P. 56(e). Accordingly, her motion for summary judgment is granted on the issue of liability.

## II.

■ Having determined that defendants violated plaintiff's rights to procedural due process, I must now formulate an appropriate remedy. Under *Carey v. Piphus,* 435 U.S. 247, 266, 98 S.Ct. 1042, 1053, 55 L.Ed.2d 252 (1978), a plaintiff who is deprived of liberty or property without due process of law is entitled to nominal damages even if the deprivation was justified. " 'It is enough to invoke the procedural safeguards of the Fourteenth Amendment that a significant property interest is at stake, whatever the ultimate outcome of a hearing.' " *Id. (quoting Fuentes v. Shevin,* 407 U.S. 67, 87, 92 S.Ct. 1983, 1997, 32 L.Ed.2d 556 (1972)). However, to the extent a deprivation was justified, a plaintiff normally cannot recover any compensatory damages from the mere fact that constitutional rights were violated. 435 U.S. at 262-63, 98 S.Ct. at 1051-52. In *Carey,* the

Supreme Court held that students who had been suspended from school without a hearing could receive only nominal damages, not to exceed one dollar, if the district court determined on remand that they would have been suspended even if their procedural due process rights had not been violated. *Id.* at 267, 98 S.Ct. at 1054. Although the Court acknowledged that mental and emotional distress were compensable harms under § 1983—provided that the plaintiff "convince[d] the trier of fact that he actually suffered distress because of the denial of procedural due process itself," *id.* at 263, 98 S.Ct. at 1052—such damages are not at issue in this case because the only compensatory damages Ortiz seeks in her complaint are increased retirement benefits. *Memphis Community School Dist. v. Stachura,* 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986) subsequently reaffirmed the *Carey* principle that damages may not be presumed in a § 1983 case and that a plaintiff "could recover compensatory damages only if he proved actual injury caused by the denial of his constitutional rights." 477 U.S. at 307, 106 S.Ct. at 2543.

*Carey* did not address whether a court could remedy a deprivation of procedural due process by ordering the body that failed to provide a constitutionally adequate hearing, in the first instance, to hold such a hearing. That issue was mooted because one of the two suspended students in that case was reinstated under a temporary restraining order while the other was reinstated during the pendency of a preliminary injunction hearing. *Id.,* 435 U.S. at 250-51, 98 S.Ct. at 1045-46. However, in the case of public employees who have been terminated without due process, the cases suggest that a constitutionally adequate hearing can be a proper remedy when a person's right to procedural due process is violated. *See Perry v. Sindermann,* 408 U.S. 593, 603, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972) (to the extent terminated college professor proved that he had a property interest in his position, professor would not be entitled to automatic reinstatement, "[b]ut such proof would obligate college officials to grant a hearing at

his request, where he could be informed of the grounds for his nonretention and challenge their sufficiency."); *Brewer v. Parkman*, 918 F.2d 1336, 1341–42 (8th Cir.1990) (holding that district court may order hearing as remedy for termination of public employee without due process); *Irizarry v. Cleveland Public Library*, 727 F.Supp. 357, 364 (N.D.Ohio 1989) (proper remedy for unconstitutional termination "is to place the defendant [*sic*] in the position that the Constitution mandates he be in prior to a pretermination hearing—awaiting said hearing while receiving pay.").

A fired public employee is analogous to a retiree whose benefits are suspended in that both have been denied property rights so significant to the affected individual that the state cannot terminate them without notice and an opportunity to respond in advance. *See Loudermill*, 470 U.S. at 544–45, 105 S.Ct. at 1494–95 (public employment); *Mathews v. Eldridge*, 424 U.S. 319, 347, 96 S.Ct. 893, 908, 47 L.Ed.2d 18 (1976) (social security disability benefits); *Campo v. New York City Employees' Retirement System*, 843 F.2d 96, 100 (2d Cir.1988) (survivor's retirement benefits), *cert. denied*, 488 U.S. 889, 109 S.Ct. 220, 102 L.Ed.2d 211 (1988); *Knudson v. City of Ellensburg*, 832 F.2d 1142, 1149 (9th Cir.1987) (retiree medical benefits).

■ Here, a constitutionally adequate hearing before NYSLRS is the appropriate remedy for defendants' violation of plaintiff's right to procedural due process. Such a hearing will provide Ortiz—belatedly—with all the process she was due at the time her advance retirement benefits were suspended in September 1989. Because the advance retirement benefits were intended only as prepayments pending the computation of the regular benefit—a fact plainly set forth in the letter accompanying the first advance—there are no grounds to estop defendants from computing plaintiff's regular benefit based on the date of birth proved at a constitutionally adequate hearing. Ortiz is entitled to receive only the regular retirement benefit that corresponds to her correct date of birth. To the extent that NYSLRS finds after an ade-

quate hearing that Ortiz's birthdate was November 7, 1925, defendants concede that she will be entitled to receive both a prospective increase in benefits and back benefits to the date of her retirement. Childs Aff. ¶ 23; Defendants' Memorandum of Law at 13. Because defendants have expressly waived any Eleventh Amendment objections to the award of retroactive relief (Defendants' Memorandum of Law at 12), that issue is not present in this case. *See Patsy v. Board of Regents*, 457 U.S. 496, 515 n. 19, 102 S.Ct. 2557, 2567 n. 19, 73 L.Ed.2d 172 (1982) (although Eleventh Amendment can be raised by state at any time, a court need not address issue on its own if state "expressly request[s]" that the issue be bypassed). On the other hand, to the extent that NYSLRS finds—after a constitutionally adequate hearing—that her birth date was September 10, 1932, she has suffered no compensable harm under § 1983. *Carey*, 435 U.S. at 267, 98 S.Ct. at 1054.

The constitutional right that Ortiz seeks to vindicate is the right to an adequate notice and hearing, not the right to have a federal court determine her birth date. Recently, the Eighth Circuit, discussing how to treat a public employee fired without due process, observed that " '[c]ourts in procedural due process cases should be interpreters of the Constitution, and not arbiters of every employment decision.... Courts do not have the time, the expertise or the authority to take on comprehensive roles as employment decision makers.' " *Brewer*, 918 F.2d at 1341 (*quoting Shaw v. Gwatney*, 604 F.Supp. 880, 887 (E.D.Ark. 1985), *aff'd in part, vacated in part*, 795 F.2d 1351 (8th Cir.1986)) (ellipses in original). That analysis states succinctly the considerations relevant to determining the appropriate remedy for the violation of Ortiz's constitutional rights. Deciding plaintiff's birthdate in a federal court would trivialize the constitutional right at stake and could unnecessarily delay receipt of any additional retirement benefits to which she may be entitled.

Accordingly, Ortiz is to receive a timely and constitutionally adequate hearing. It is unnecessary to describe the exact proce-

dure for such a hearing, other than that Ortiz must be given a "meaningful opportunity to present [her] case." *Mathews*, 424 U.S. at 349, 96 S.Ct. at 909. Defendants have offered to provide Ortiz with an "evidentiary hearing" pursuant to Retirement & Social Security Law § 74(d).[1] Childs Aff. ¶ 24. It appears that a § 74(d) hearing would provide adequate due process because, by the terms of the statute itself, the determination at that hearing is reviewable by a state court pursuant to Article 78 of the Civil Practice Law and Rules. *See Campo*, 843 F.2d at 102–03 (administrative determination of entitlement to retirement benefits satisfies due process because of availability of Article 78 review).

■ Plaintiff also will receive nominal damages of one dollar for the deprivation of her right to procedural due process as well as attorney's fees pursuant to 42 U.S.C. § 1988. Although the complaint seeks punitive damages against defendants Childs and O'Connor, plaintiff will not receive such exemplary damages because she has not presented any facts from which a reasonable person could infer "malicious" conduct on the part of those defendants. *Carey*, 435 U.S. at 266, 98 S.Ct. at 1054. It is plain from Childs' and O'Connor's affidavits that they conducted their investigations in good faith and with a desire to reconcile an actual discrepancy in the documentary evidence. Plaintiff's own affidavit fails to contradict this inference. Furthermore, there is no indication that those two defendants had any personal involvement in the decision to suspend plaintiff's advance retirement benefits without notice, let alone that they acted maliciously.

For the reasons set forth above, plaintiff's motion for summary judgment is granted with respect to her federal proce-

dural due process claims. To the extent plaintiff's state causes of action are not subsumed by her federal claims or not mooted by defendants' concession that Ortiz will receive full back benefits in the event her birthdate proves to be November 7, 1925, I decline to exercise pendent jurisdiction over those causes of action. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

SO ORDERED.

---

**1.** Section 74(d) of the New York State Retirement & Social Security Law provides:

"At any time within four months after the mailing of a ... [notice of the comptroller's determination of an application for a retirement allowance], the applicant or his counsel may serve a written demand upon the comptroller for a hearing and redetermination of such application. After the service of such demand, the controller shall hold a hearing upon such application at which the applicant may be represented by counsel. The comptroller shall have the same powers upon such hearing as upon the original application. After such hearing the comptroller shall make his final determination. A copy thereof shall be mailed to the applicant and his counsel, if any. Such final determination shall be subject to review only as provided in article seventy-eight of the civil practice law and rules."