DECISION
Appellant retirees appeal from a decision of the Board of the Employees' Retirement System of Rhode Island ("ERSRI"). That decision affirmed actions taken by ERSRI's Executive Director in an effort to suspend the receipt of Appellants' pensions were they to continue with their post-retirement employment. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 I Facts and Travel
The facts of this case are not in dispute. All Appellants were at one time employed in various capacities at the Rhode Island Department of Transportation ("RIDOT"). All retired from state service under honorable circumstances between 1998 and 2004. Upon retirement, Appellants began to draw pensions from ERSRI.
In March of 1999, the RIDOT was confronted with a ballooning workload in the form of construction and inspection projects attendant to the implementation of a new *Page 2 
Federal highway program. Constrained by a cap on the number of full-time employees that it could hire, the State solicited bids from private corporations that could furnish the RIDOT with temporary employees possessed of the skill set necessary to effectively address the increased workload. Three months later, on June 15, 1999, the State entered into an agreement with Cataldo Associates ("Cataldo"), a civil engineering firm headquartered in Johnston, Rhode Island, wherein Cataldo would supply the sought-after workforce.
To meet the RIDOT's staffing needs, Cataldo hired the Appellants and assigned them to various RIDOT jobsites. The construction and inspection work that Appellants subsequently performed in the regular course of their employment was supervised by RIDOT engineers; however, the checks that the Appellants received were generated by Cataldo. Throughout their employment with Cataldo, the Appellants continued to receive state retiree pension benefits from ERSRI.
The facts giving rise to the instant matter were first brought to the attention of ERSRI in March of 2005. That month, the Office of the General Treasurer forwarded copies of two anonymous letters to ERSRI. The letters recounted the Appellants' retirement from RIDOT service, their receipt of pension benefits, and their subsequent employment with Cataldo. Upon receipt of the anonymous letters, ERSRI commenced an investigation into the employment status of the Appellants.
On March 21, 2005, ERSRI sent letters of inquiry to each of the Appellants as well as to Cataldo's Director of Human Resources. A two-page questionnaire, which sought information related to the scope of the Appellants' employment with Cataldo, accompanied each letter. Subsequently, the Appellants completed the questionnaires and *Page 3 
returned them to ERSRI. Ralph A. Cataldo, President of Cataldo Associates, responded on behalf of the company.
On July 15, 2005, based on the information that the Appellants and Cataldo provided, ERSRI Executive Director Frank J. Karpinski mailed letters to the Appellants informing them that ERSRI had decided to suspend the receipt of their pensions should they continue to work for Cataldo. In his letter, Director Karpinski cited as authority for ERSRI's action G.L. 1956 § 36-10-36, which states in relevant part:
 On and after July 7, 1994, no member who has retired under the provisions of titles 16, 36, or 45 may be employed or reemployed by any state agency or department unless any and all retirement benefits to which he or she may be entitled by virtue of the provisions of titles 16, 36 or 45 are suspended for the duration of any employment or reemployment. . . . Notice of any such post-retirement employment or reemployment shall be sent monthly to the retirement board by the employing agency or department and by the retired member. Section 36-10-36(a).
As further authority for the action taken by ERSRI, Director Karpinski also cited the following ERSRI policy, adopted at the January 10, 2001 meeting of the Retirement Board:
 VOTED: To accept the recommendation of the Rules and Regulations sub-committee that the intention of the law and the regulations of the Retirement Board, a person may not do as a corporation, or as an employee of a corporation, what an individual cannot do []. . . .
Consequently, all Appellants, save Walter Cook, terminated their employment with Cataldo. Subsequently, on July 20, 2005, ERSRI suspended disbursements of Mr. Cook's retirement benefits. In response, the Appellants sent a letter to ERSRI on August 3, 2005, declaring their intent to appeal the action taken by ERSRI. The following day, *Page 4 
ERSRI mailed a return letter to Appellants informing them that their appeal had been assigned to ERSRI Hearing Officer Teresa Rusbino.
On September 22, 2005, Officer Rusbino presided over the initial administrative hearing in the instant matter. At the hearing, counsel for the Appellants propounded a three-pronged argument as to why the actions taken by ERSRI were improper and invalid. Appellants asserted that ERSRI lacked the statutory authority to suspend the Appellants' retirement benefits, that the 2001 ERSRI policy cited by Director Kaprinski in his letter of July 15, 2005 was invalidly promulgated, and that the actions taken to suspend Appellants' retirement benefits without a pre-deprivation hearing constituted a violation of the Appellants' due process rights. At the conclusion of the hearing, Officer Rusbino adjourned the meeting with plans to revisit the matter at a later date.
Two months later, on November 17, 2005, the hearing was reconvened. Further testimony was proffered on issues substantially similarly to those debated at the initial hearing. At the end of the hearing, in lieu of closing arguments, the parties established a briefing schedule for the submission of memoranda of law. Hearing Officer Rusbino received copies of all relevant materials by mid-February 2006.
Several months later, in July of 2006, Hearing Officer Rusbino issued a written decision affirming the action taken by ERSRI in July of 2005. On July 17, 2006, copies of the decision were mailed to both parties. Subsequently, on August 10, 2006, the Appellants filed a complaint with the Providence Superior Court, seeking reversal of Officer Rusbino's decision. ERSRI's answer, filed one week later, asserted as an affirmative defense the Appellants' failure to exhaust all available administrative remedies. *Page 5 
Pursuant to Regulation 4 of ERSRI's Rules of Practice and Procedure, on August 30, 2006, ERSRI sent a letter to Appellants notifying them of their right to present testimony to the full Retirement Board at the Board's September meeting. A hearing before the full Board was conducted on September 13, 2006. Much of the testimony adduced at the hearing focused on the issue of whether ERSRI's Board had properly promulgated the policy it adopted in January of 2001. At the conclusion of the hearing, after evaluating the arguments of counsel and the evidence in the record, the Board voted 12 to 1 to affirm the decision of Hearing Officer Rusbino.
Two weeks later, on September 27, 2006, ERSRI mailed a copy of the Board's decision to the Appellants. Subsequently, appellate proceedings in the Superior Court proceeded. On November 26, 2006, ERSRI filed a copy of the record in the instant matter with the Clerk of the Superior Court.
On appeal before this Court, Appellants argue that the Board's affirmation of Hearing Officer Rusbino's decision was improper because ERSRI lacked the statutory authority to undertake efforts to suspend Appellants' receipt of their retirement benefits. Additionally, Appellants argue that the 2001 ERSRI policy cited by Director Kaprinski in his letter of July 15, 2005 as authority for ERSRI's actions was invalidly promulgated in contravention of the rulemaking provisions of the Administrative Procedures Act. Finally, Appellants argue that ERSRI violated their due process rights by failing to provide them with the opportunity for a hearing before informing them that their pension benefits would be suspended were they to continue their post-retirement employment.
Conversely, ERSRI contends that the January 2001 policy at issue was properly promulgated because ERSRI was not subject to the provisions of the Administrative *Page 6 
Procedures Act governing rulemaking procedures at the time of the policy's passage. Further, notwithstanding the validity of the January 2001 policy, ERSRI contends that the action taken by Director Karpinski in his July 15, 2005 letter was authorized by G.L. 1956 § 36-10-36 and § 36-8-3. Lastly, ERSRI rejects the Appellants' contention that ERSRI violated their due process rights, asserting that Appellants' due process claim is unsupported by the facts and the law.
 II Standard of Review
The Superior Court's review of the decision of an administrative agency is governed by the Administrative Procedures Act ("APA"), § 42-35-1, et seq. Iselin v. Retirement Bd. of Employees' RetirementSystem of Rhode Island, 943 A.2d 1045, 1048 (R.I. 2008) (citingRossi v. Employees' Retirement System of Rhode Island. 895 A.2d 106, 109
(R.I. 2006)). Section 42-3 5-15(g) of the APA states:
 The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law; *Page 7 
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
In reviewing an agency decision, this Court is limited to an examination of the certified record in deciding whether the agency's decision is supported by substantial evidence. Center for Behavioral Health, R.I.,Inc., v. Barros, 710 A2d 680, 684 (R.I. 1998) (citations omitted). Substantial evidence has been defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means more than a scintilla but less than a preponderance." WayneDistrib. Co. v. R.I. Comm'n for Human Rights, 673 A.2d 457, 459 (R.I. 1996) (citing Newport Shipyard Inc. v. R.I. Comm'n for HumanRights, 484 A.2d 893, 896 (R.I. 1994)). This Court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. Interstate Navigation Co. v. Div. of Pub. Utils. Carriers of R.I., 824 A.2d 1282, 1286 (R.I. 2003) (citations omitted). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Baker v. Dept. of Employment Training Bd. ofReview, 637 A.2d 360, 363 (R.I. 1994) (quoting Milardo v. Coastal Res.Mgmt. Council, 434 A.2d 266, 272 (R.I. 1981)).
The agency in this case utilizes a two-tier review process, in which grievances are heard first by a hearing officer, who issues a written decision that is submitted to the Retirement Board. The Board considers the decision, along with any further briefs or arguments, and renders its own decision. ERSRI Reg. § 10.00(a). This two-step procedure has been likened to a funnel. Environmental Scientific Corp. v. Durfee, *Page 8 621 A.2d 200, 207-08 (R.I. 1993). The hearing officer, at the first level of review, "sits as if at the mouth of the funnel" and analyzes all of the evidence, opinions, and issues. Id. The Board, stationed at the "discharge end" of the funnel, the second level of review, does not receive the information considered by the hearing officer first hand.Id. Our Supreme Court has held, therefore, that the "further away from the mouth of the funnel that an administrative official is . . . the more deference should be owed to the fact finder." Determinations of credibility by the hearing officer, for example, should not be disturbed unless they are "clearly wrong." Id. at 206.
"Although factual findings of an administrative agency are afforded great deference, a dispute involving statutory interpretation [or, by analogy, an agency rule adopted pursuant to an enabling statute] is a question of law to which [the courts] apply de novo review." Rossi v.Employees' Retirement System of the State of Rhode Island, 895 A.2d 106,110 (R.I. 2006) (citing In re Advisory Opinion to the Governor.732 A.2d 55, 60 (R.I. 1999); City of East Providence v. Public UtilitiesCommission. 566 A.2d 1305, 1307 (R.I. 1989)). The courts must "give deference to an agency's interpretation of an ambiguous statute [or rule] that it has been charged with administering and enforcing, provided that the agency's construction is neither clearly erroneous nor unauthorized." Arnold v. Rhode Island Dep't of Labor and Training Bd. ofReview. 822 A.2d 164, 169 (R.I. 2003) (citing In re Lallo. 768 A.2d 921,926 (R.I. 2001)); see also Lyman v. Employees' Retirement System of theState of Rhode Island. 693 A.2d 1030, 1031 (R.I. 1997). As such, the courts remain the final arbiters of questions of construction of statutes or agency rules. Rossi, 895 A.2d at 110. *Page 9 
 III Jurisdiction
A threshold issue, which ERSRI raised as an affirmative defense in its answer to Appellants' complaint, is this Court's jurisdiction to hear the instant appeal. The APA provides that an individual "who has exhausted all administrative remedies available to him within the agency, and who is aggrieved by a final order in a contested case is entitled to judicial review. . . ." Section 42-35-15(a). In addition, an administrative appeal to this Court must be filed "within thirty (30) days after mailing notice of the final decision of the agency. . . ." Section 42-35-15(b).
Generally, when exhaustion is statutorily mandated, as § 42-35-15(a) of the APA provides, the failure to exhaust administrative remedies will divest the court of jurisdiction. Paton v. Poirier, 109 R.I. 401, 406,286 A.2d 243, 245 (R.I. 1972); see also 3 Charles H. Koch, Jr.,Administrative Law and Practice, § 13.21[3] (2d ed. 1997). Policy-wise, adherence to the exhaustion doctrine "enables the agency to develop a factual record, to apply its expertise to the problem, to exercise its discretion, and to correct its own mistakes, and is credited with promoting accuracy, efficiency, agency autonomy, and judicial economy."Power v. City of Providence, 582 A.2d 895, 899 (R.I. 1990) (citingChristopher W. v. Portsmouth School Committee, 877 F.2d 1089, 1094 (1st Cir. 1989)).
Notwithstanding these general principals, courts have developed several exceptions to the exhaustion doctrine. See Koch at § 13.22. One of the most prevalent of these exceptions is the argument that complete exhaustion of all administrative remedies available would be futile.See Id, at § 13.22[4]; Arnold v. Lebel, 941 A.2d 813, 818 (R.I. 2007) ("[TJhis Court has made exceptions when the exhaustion of administrative *Page 10 
remedies would be futile.") Furthermore, in discussing other exceptions to the exhaustion doctrine, our Supreme Court has stated that "[w]e give less deference to the exhaustion doctrine when `a pure matter of law' is before the administrative agency." Power, 582 A.2d at 899-900; see also Koch at § 13.22[7]. This justification for departure from the exhaustion doctrine has its greatest force when the allegation at issue is that an agency acted outside its delegated authority. See Arnold,941 A.2d at 818; Koch at § 13.22[7].
In the case at bar, the Appellants had not exhausted all of the administrative remedies available to them at the time they filed their complaint with the Superior Court on August 10, 2006, because the full Retirement Board had not yet held its hearing on the instant matter. On September 27, 2006, following the full Board's affirmation of the Hearing Officer's decision, ERSRI mailed a copy of the Board's decision to the Appellants. At that juncture the Appellants had a thirty day window within which they could have properly re-filed their complaint in accordance with § 42-35-15(b); however, based on an examination of the record in its entirety, it appears that no such filing ever occurred. While rote application of the exhaustion doctrine would mark the filing of the sole complaint in this case premature and deprive this Court of jurisdiction, Appellants' case is one wherein questions of law preponderate over questions of fact; therefore "less deference to the exhaustion doctrine" is warranted. Power, 582 A.2d at 899-900
(explaining that Appellant was not compelled to exhaust administrative appeals still available to him because the only question to be resolved was whether passage of the Providence Retirement Act constituted a violation of the Rhode Island Fair Employment Practices Act). *Page 11 
In the instant matter, the purposes of the exhaustion doctrine would not be furthered by disallowing the Appellants' claim from proceeding. Here there is no factual record to develop. As noted in Section I.,supra, the facts of this case are not in dispute. Moreover, the gravamen of Appellants' allegation is that ERSRI acted outside its delegated statutory authority and, consequently, violated the Appellant's due process rights. These issues constitute questions of law. See 5 Jacob A. Stein et al., Administrative Law, § 48.02 ("[A] claim that an agency has exceeded its statutory authority presents a legal question by requesting the court to construe the agency's organic statute to ascertain whether the agency's action was overly broad."). Therefore, in accordance withPower, supra, this Court finds that Appellants' administrative appeal is properly before the Court.
 IV The Board's Decision A Authority for ERSRI's Actions
Appellants first argue that the 2001 ERSRI policy cited by Director Kaprinski in his letter of July 15, 2005 as authority for ERSRI's actions was invalidly promulgated in contravention of the rulemaking provisions of the APA. Conversely, ERSRI contends that the January 2001 policy at issue was properly promulgated because ERSRI was not subject to the provision of the APA that govern rulemaking procedures at the time of the policy's passage. This Court turns to the legislative history § 42-35-18.
At the time the Retirement Board adopted the contested policy, January 10, 2001, § 42-35-18(b) read, in relevant part: *Page 12 
 None of the provisions of [the APA] shall apply to the following sections and chapters:
 (16) Chapter 8 of title 36 (Retirement System Administration)
 (17) Chapter 9 of title 36 (Retirement System Membership and service credits)
 (18) Chapter 10 of title 36 (Retirement System Contributions and benefits)
Subsequently, the General Assembly amended § 42-35-18(b) via passage of PL. 2002 ch. 316 § 1, which removed the Retirement System and the Retirement Board from the list of express exemptions enumerated in § 42-35-18(b) by deleting the language of § 42-35-18(b)(16) through § 42-35-18(b)(18) inclusive. This amendment became effective on June 28, 2002.
"It has long been established as a general rule of statutory construction that statutes and their amendments are applied prospectively." Newport Yacht Management, Inc. v. Clark, 567 A.2d 364,366 (R.I. 1989) (citing Emmett v. Town of Coventry, 478 A.2d 571, 572
(R.I. 1984); Murphy v. Murphy, 471 A.2d 619, 623 (R.I. 1984)). "An exception to this rule occurs if it appears by strong language or necessary implication that the Legislature intended that the statute be given retrospective application." Id. (citing Spagnoulo v.Bisceglio, 473 A.2d 285, 287 (R.I. 1984)). An examination of § 42-35-18(b) and P.L. 2002 ch. 316 § 1 shows neither direct expression of retroactivity nor the presence of any language that mandates the drawing of such an inference.
Furthermore, our Supreme Court has recently averred, in the context of prospective legislative alterations to an agency's operational structure, that "[t]he past acts of [an administrative agency] should be accorded de facto validity." In re Request *Page 13 for Advisory Opinion from House of Representatives (Coastal ResourcesManagement Council), 961 A.2d 930, 942 n. 18 (R.I. 2008). Accordingly, this Court finds that in January, 2001, actions undertaken by ERSRI and the Retirement Board were statutorily exempted from the reach of the APA's provisions, including the prescribed procedures for administrative rulemaking delineated in § 42-35-3, because the changes wrought by P.L. 2002 ch. 316 § 1 were not applicable to ERSRI's 2001 actions.
Nevertheless, Appellants contend that even if the 2001 policy was validly enacted, the action taken by ERSRI to suspend receipt of the Appellants' pension benefits constitutes action in excess of the powers that have been delegated by statute to the agency. Appellants argue that only the General Assembly has the power to authorize the revocation of pension benefits or restrict the post-retirement employment of retired state workers. This contention is of no merit.
Notwithstanding the validity of the January 2001 policy, authority for the actions undertaken by ERSRI and the Board is found in the statutory language of § 36-10-36 when read in conjunction with § 36-8-3. The pertinent provisions of § 36-10-36(a) state that:
 On and after July 7, 1994, no member who has retired under the provisions of titles 16, 36, or 45 may be employed or reemployed by any state agency or department unless any and all retirement benefits to which he or she may be entitled . . . are suspended for the duration of any employment or reemployment. . . . Notice of any such post-retirement employment or reemployment shall be sent monthly to the retirement board by the employing agency or department and by the retired member. *Page 14 
Further, § 36-8-3 reads in relevant part:
 The general administration and the responsibility for the proper operation of the retirement system and for making effective the provisions of chapters 8 — 10 of this title are hereby vested in a retirement board. . . . The retirement board shall also perform such other junctions as are required for the execution of chapters 8-10 of this title. (Emphasis added.)
Though the statutory language at issue does not explicitly state that the Board has the power to take action to suspend the receipt of retirement benefits should a member engage in prohibited post-retirement employment, the Board's interpretation of § 36-10-36 and § 36-8-3 as authorizing such action is an entirely reasonable reading of the statute. In enacting § 36-8-3, the General Assembly has endowed the retirement board with the authority to "administer" and "operate" the retirement system. The retirement board also possesses the power to "perform other such functions as are required" for the administration of the retirement system.
As our Supreme Court noted in Arnold, supra, courts must "give deference to an agency's interpretation of an ambiguous statute [or rule] that it has been charged with administering and enforcing, provided that the agency's construction is neither clearly erroneous nor unauthorized." Arnold, 822 A.2d at 169; see also 2B Norman J. Singer,Sutherland Statutory Construction § 49.05 at 17 (5th ed. 1992) (noting that the interpretation of a statute by an agency charged with its administration is entitled to great deference, especially when the interpretation has been applied consistently and for a long period of time.) Moreover, in interpreting the statutory language at issue, our Supreme Court has previously stated that "[the] language [of § 36-8-3] is sufficiently broad so as to include the retirement board's administrative authority to determine pension *Page 15 
eligibility." Perrotti v. Solomon, 657 A.2d 1045, 1048 (R.I. 1995). Furthermore, in Romano v. Retirement Bd. of the Emloyees' RetirementSystem of R.I., 767 A.2d 35 (R.I. 2001), the Court expressed a likeminded position with respect to the powers accorded to ERSRI and the Board when it stated that "[njeither the facts of this case nor [§36-10-36] barred the [retirement] board from suspending the payment of future pension benefits to [appellant] after it discovered . . . that he had been serving as a full-time municipal employee while he was also receiving pension benefits from the state." Romano, 767 A.2d at 38.
Here, the Board's interpretation of § 36-8-3 as authorizing actions taken to effectuate the provisions of § 36-10-36 cannot be said to be clearly erroneous or unauthorized in light of our Supreme Court's pronouncements in Perrotti and Romano. Accordingly, this Court finds that the actions undertaken by ERSRI in an effort to suspend the receipt of Appellants' retirement benefits (and the Board's subsequent endorsement of those actions) were well within the statutory authority delegated to ERSRI and the Board pursuant to the provisions of § 36-8-3
and § 36-10-36.
Appellants further argue that ERSRI and the Board's determination that Appellants, by virtue of their employment with Cataldo, had been "employed or reemployed by any state agency or department" within the meaning of § 36-10-36 was clearly erroneous because Appellants were employees of Cataldo Associates and not employees of the RIDOT. Despite Appellants' contention, this Court turns to our Supreme Court's ruling in Poirier v. Manpower, Inc., 689 A.2d 1036 (R.I. 1997), for guidance. Therein, the Court affirmed a trial justice's determination that an individual working for a temporary agency was an employee of both the temporary agency and the *Page 16 
company to which the individual was assigned when that company exercised all supervision and control over the temporary employee.Poirier, 689 A.2d at 1037; see also Freeman v. Kansas,128 F.Supp.2d 1311, 1316 (D.Kan. 2001) ("Although plaintiff was a temporary employee of [a placement agency] assigned to work at the State, the State exerted sufficient control by supervising plaintiffs daily activities and providing the place of work and the tools to work to conclude that the State was plaintiffs employer.") In this case, though the paychecks that Appellants received for their services were generated by Cataldo, it has been stipulated that the Appellants, while performing construction and inspection work in the service of the RIDOT, were under the exclusive control of RIDOT engineers. Therefore, in accordance with the doctrine of agency deference as recounted in Arnold, supra, as well as the guidance gleaned from our Supreme Court's decision in Poirier, this Court finds ERSRI's determination — that Appellants, by virtue of their employment with Cataldo, had been "employed or reemployed by any state agency or department" within the meaning of § 36-10-36 — and the action undertaken by ERSRI to suspend the receipt of Appellants' retirement benefits pursuant to that determination was not in excess of the statutory authority delegated to ERSRI and the Board.
 B Appellants' Due Process Rights
The basic concept of due process of law is found in theFourteenth Amendment to the United States Constitution and Article 1, Section 2, of the Rhode Island Constitution, both of which prohibit a state from depriving any person "of life, liberty, or property, without due process of law." "A claimant alleging a deprivation of due process rights *Page 17 
must demonstrate that either a property or liberty interest clearly protected by the due process clause was divested . . . without [adequate] procedural safeguards." Bradford Associates v. Rhode IslandDivision of Purchases, 772 A.2d 485, 490 (R.I. 2001) (quotingSalisbury v. Stone, 518 A.2d 1355, 1360 (R.I. 1986)) (citing Board ofRegents of State Colleges v. Roth, 408 U.S. 564, 569, 92 S.Ct. 2701,2705, 33 L.Ed.2d 548, 556 (1972)). Accordingly, whether the protections of Due Process apply depends on the nature of the interest being infringed. Roth, 408 U.S. at 570-71, 92 S.Ct. at 2706.
In this case, the Appellants claim an alleged property interest. Constitutionally protected property interests may take many forms. The United States Supreme Court has made clear that "the property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money." Id. at 571-572. Some heretofore recognized property interests include statutory entitlements,Mathews v. Eldridge, 424 U.S. 319, 332, 96 S.Ct. 893, 901 (1976), and, among those, vested rights in deferred compensation from an employer, otherwise known as pension benefits. Matter of Almeida. 611 A.2d 1375,1385 (R.I. 1992). However, to have and lose an entitlement is not enough to establish a deprivation of property without due process of law; it establishes only that a deprivation of property has taken place.Ellis v. Sheahan, 412 F.3d 754, 756 (7th Cir. 2005).
The essence of sufficient procedural due process is meaningful notice and meaningful opportunity to be heard, Mullane v. Central Hanover Bank Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 656-57 (1950); however, procedural due process is unlike other legal rules in that it `"is not a technical conception with a fixed content unrelated to time, place and circumstances.'" Gem Plumbing Heating Co., Inc. v. Rossi, *Page 18 867 A.2d 796, 809 (R.I. 2005) (quoting Cafeteria Restaurant Workers Union,Local 473, AFL-CIO v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743,6 L.Ed.2d 1230 (1961)) (internal citations omitted). Rather, procedural due process is a flexible standard, which varies depending on the nature of the interest affected and the circumstances of the deprivation.Gorman v. University of R.I., 837 F.2d 7, 12 (1st Cir. 1988).
Appellants argue that ERSRI violated their due process rights by failing to provide them with the opportunity for a hearing before informing them that their statutory pension benefits would be suspended were they to continue their post-retirement employment. To prevail on this claim, Appellants must show that the property was taken away from them without notice and the opportunity for a hearing at which they could try to contest the deprivation. See Ellis, 412 F.3d at 756.
With respect to constitutionally sufficient notice, in Ortiz v.Regan, 769 F.Supp. 570, 572 (S.D.N.Y. 1991), upon receiving information purporting to disqualify the plaintiff from continued receipt of her retirement pension, defendant New York State and Local Retirement Systems officials summarily suspended the plaintiffs benefits.Id. at 572. Prior to the suspension, the agency failed to provide the plaintiff with any notice or any opportunity to challenge the proposed action or respond to the allegations made against her. Id The plaintiff learned that her benefits had been suspended only after her monthly benefit check failed to arrive. Id. Subsequently, the United States District Court held that the procedures employed by the agency were constitutionally inadequate and amounted to a violation of the plaintiffs procedural due process rights. Id. at 573.
This Court finds that the notice provided by ERSRI in the instant matter was consistent with the minimal requirements of procedural due process. The facts giving *Page 19 
rise to the case at bar can be distinguished from the underlying facts of the Ortiz case, wherein the agency sent no notice whatsoever to the pensioner prior to suspension of her retirement benefits. Here, ERSRI sent notice to the Appellants of ERSRI's proposed actions before those actions were effectuated, via Director Karpinski's letter of July 15, 2005. Accordingly, ERSRI provided Appellants with meaningful notice of its proposed actions, in accordance with Mullane, supra.
Further, with respect to the Appellants' meaningful opportunity to be heard, although the United States Supreme Court has held that in some instances a pre-termination administrative hearing may be necessary,see Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287
(1970), this is by no means a universal requirement of due process.See Mathews, 424 U.S. at 349, 96 S.Ct. at 910 (holding that an evidentiary hearing is not required prior to the termination of disability benefits in order for administrative procedures to fully comport with due process requirements). Rather, "some kind of hearing is required at some time before a person is finally deprived of his property [or liberty] interests." Mosbv v. Devine, 851 A.2d 1031, 1077
(R.I. 2004) (quoting Wolff v. McDonnell 418 U.S. 539, 557-58,94 S.Ct. 2963, 2975, 41 L.Ed.2d 935, 952 (1974)) (emphasis added); see also 16B Am Jur 2d, Constitutional Law § 957 ("Generally, due process of law is afforded litigants if they have an opportunity to be heard at anytime before a final judgment is entered.") (emphasis added).
Determining the adequacy of hearing procedures in any given circumstance requires weighing several factors pursuant to the balancing test first elucidated by the United States Supreme Court in Mathews v.Eldridge, supra. Under Matthews, a court's first task is to determine the nature and significance of the interest at issue. *Page 20 424 U.S. at 341. Next, a court must assess the risk of an erroneous deprivation of that interest under the procedures available and what value any additional safeguards would provide. Id. at 343. Finally, a court examines the competing state interests. Id. at 341.
With respect to the nature and significance of the interest at issue in the case at bar, Appellants' continued receipt of their retirement benefits is unlike the public assistance benefits at issue inGoldberg. 397 U.S. 254. Therein, a pre-termination administrative hearing was required because the appellants' receipt of public assistance was necessary for them to meet the basic demands of subsistence. Id at 265. Here, Appellants could resort to either the pension benefits at issue or continued income from Cataldo. Further, with respect to the risk of an erroneous deprivation of the property interest at issue under the procedures available, the two-tiered administrative review employed by ERSRI provided the Appellants with ample opportunity to remedy any errors that might have arisen before the agency entered a final judgment on the matter. Finally, with respect to the competing state interest, Rhode Island has a considerable interest in minimizing administrative burdens and the not-insubstantial expenses that additional procedures would require.
Having weighed the factors of the Matthews balancing-test, this Court finds that ERSRI provided Appellants with a meaningful opportunity to be heard, in accordance with Mullane, supra. By so providing, this Court holds that the procedures employed by ERSRI and the Retirement Board in their efforts to suspend the receipt of Appellants' retirement benefits pursuant to their determination that Appellants had been improperly reemployed by a state agency or department sufficiently satisfied the minimal requirements of due process. *Page 21 
 V Conclusion
After a review of the entire record, the Court finds that the Retirement Board's affirmation of the actions undertaken by ERSRI in an effort to suspend the receipt of Appellants' retirement benefits was neither in violation of its statutory authority, nor clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. Furthermore, this Court concludes that the procedures employed by ERSRI and the Board satisfied the minimal requirements of procedural due process. Substantial rights of the Appellants have not been prejudiced. The Board's decision is therefore affirmed. *Page 1