286 A.2d 243.

GEORGE PATON *et al. vs.* ROBERT POIRIER *et al.*

JANUARY 20, 1972.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. This civil action for injunctive relief was tried before a Superior Court justice sitting without a jury. One of the plaintiffs is Rhode Island Public Employees, Council 70, an affiliate of American Federation of State, County and Municipal Employees, AFL-CIO; the others are eight union members who are employed as custodians or janitors by the School Committee of the Town of Narragansett. The members of the Narragansett School Committee are the defendants, and they have appealed from a judgment which enjoins them from discharging the custodians "until action looking to a contract under Chapter 28-9.4 is completed." For convenience, we will refer to the individual plaintiffs as "custodians," to the plaintiff-union as "Council 70," to the two collectively as "plaintiffs," and to the defendants as the "school committee."

The essential facts are not in dispute. In May 1970 a representation petition was filed with the State Labor Relations Board (SLRB), an election was held, and Council 70 was certified as the bargaining representative of a unit consisting of all non-teaching personnel employed by the school committee, including the custodians. Following that certification the council and the school committee entered into negotiations. When it appeared that they would be unable to reach an agreement on a contract, the unresolved issues were referred to a mediator. His recommendations, although acceptable to the plaintiffs, were rejected by the school committee in December 1970. Matters remained at a standstill until the middle of January 1971, when the school committee awarded a contract to Manpower, Inc. for the performance of all custodial services at the Narragansett schools. It then advised the custodians that their employment would be terminated on January 29, 1971. Thereupon, Council 70 filed charges of unfair labor prac-

tices against the school committee with the SLRB. They alleged, in substance, that the school committee had (1) attempted to interfere with Council 70's existence by dismissing the custodians; (2) refused to bargain collectively; and (3) attempted to circumvent the provisions of G. L. 1956 (1968 Reenactment) §28-7-12.[1] The SLRB then scheduled a conference for the purpose of obtaining the views of the parties with respect to the charges, but the intervention of this proceeding has apparently resulted in its indefinite postponement.[2]

In the complaint filed in the Superior Court, plaintiffs, after reciting the travel of the case, allege that they have exhausted their administrative remedies, that they have no other adequate remedy, and that they will suffer irreparable injury unless the school committee is permanently enjoined and restrained from dismissing the custodians "* * * until all of the provisions of the State Labor Relations Act are exhausted." When relief was granted in the Superior Court this appeal followed.

The school committee now argues that plaintiffs have charged it with enagaging in unfair labor practices, that the Municipal Employees' Arbitration Act [G. L. 1956 (1968 Reenactment) chap. 9.4 of title 28] vests the SLRB with exclusive initial jurisdiction to hear such charges, and that the Superior Court could not take jurisdiction in the

---

[1] In pertinent part §28-7-12 provides:
"Employees shall have the right of self organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities, for the purpose of collective bargaining or other mutual aid or protection, free from interference, restraint, or coercion from any source * * *."

[2] In their briefs both parties avowed their good intentions, plaintiffs having asserted their willingness to "resume good faith negotiations at any time," and the school committee its, "to resume negotiations and/or proceed to arbitration on contract terms * * *."

matter until plaintiffs had exhausted all available administrative remedies.

In support of its position the school committee relies upon *Warren Education Association* v. *Lapan,* 103 R. I. 163, 235 A.2d 866 (1967). That case originated in the Superior Court. The complaint charged the local school committee with refusing to bargain collectively, and the court was asked to mandamus the committee to execute a contract formalizing an agreement previously reached by the parties at the bargaining table. Relief was denied and on appeal we affirmed. It was our judgement that the matters in issue were cognizable in the first instance by the SLRB, that it provided a forum where the union and its teacher-members could find plain, speedy and adequate remedies for their alleged grievances, and that recourse to the courts was unavailable until those remedies had been fully explored and exhausted.

It is true, of course, that in *Lapan* the controlling legislation was the School Teachers' Arbitration Act [G. L. 1956 (1968 Reenactment) chap. 9.3 of title 28] whereas in this case the Municipal Employees' Arbitration Act governs. The language of each, however, wherever pertinent, substantially parallels that of the other, and such slight differences as there may be are without significance on the question of *Lapan's* precedential value. Premising our conclusion upon the substantial identity of the two enactments, it would appear to us that *Lapan* is on all fours with, and therefore dispositive of, this case.

As we understand them, however, plaintiffs argue that *Lapan* is distinguishable because the teachers in that case, unlike the custodians here, had tenure and were not threatened with an interruption of their regular employment. The loss of jobs, plaintiffs contend, could not have been prevented administratively, and therefore would have subjected the custodians to irreparable loss had not the Su-

perior Court intervened and, by its injunction, preserved the status quo pending final administrative action.

We find this argument untenable. The plaintiffs concede that prior to the adoption in 1967 of the Municipal Employees' Arbitration Act, a custodian was an employee at will, and that he had no cause of action if discharged without reason. They now argue, however, that with the enactment of that legislation a custodian acquired at least limited job security, including the right not to be discharged while Council 70 was engaged in collective bargaining with the school committee. They point to no statutory or decisional law in this state, or to any provision in the local ordinances which grants them that right. Instead, they rely upon what they say must have been intended when the legislation was enacted and they argue that the Superior Court in some undescribed manner thereby acquired jurisdiction to protect that right. When those vague assertions are examined in the context of what plaintiffs allege in their complaint in this action and in the charges which they filed with the SLRB, it becomes apparent that the basis of their claim is that the school committee has done something which the Municipal Employees' Arbitration Act forbids and that it was engaging or had engaged in unfair labor practices.

In the light of plaintiffs' agreement that the right they now assert was nonexistent prior to the enactment of the Municipal Employees' Arbitration Act, and in the absence of a suggestion from them as to an alternative power source, it is to the legislation which created the asserted right that we must look in order to ascertain how that right is to be protected or enforced.

When we examine the Municipal Employees' Arbitration Act we find that it provides, in §28-9.4-5 and §28-9.4-7, that a  complaint that the Act has been violated or that a party is engaging in unfair labor practices shall be heard

and dealt with by the SLRB as provided for in the State Labor Relations Act [G. L. 1956 (1968 Reenactment) chap. 7 of title 28]. That Act vests the SLRB with exclusive initial jurisdiction to prevent employers from engaging in unfair labor practices (§28-7-20); authorizes it, *inter alia,* to order employers to cease and desist from such practices, to reinstate with or without pay any employee whose work has ceased or whose return to work has been delayed or prevented as a result of any unfair labor practice, and to take such further affirmative or other action as will effectuate the policies of the State Labor Relations Act (§28-7-22); and permits it to petition the Superior Court for process to enforce its orders against a recalcitrant or noncomplying employer (§28-7-26). Moreover, it further provides that any case reaching the Superior Court via the administrative route "takes precedence over all other matters except matters of the same character," and that once reached, shall proceed "with greatest possible expedition." (§28-7-32).

In our judgment the procedures as outlined, if followed by plaintiffs, would provide them with an effective forum in which to air their grievances, as well as with a plain, speedy and adequate remedy for any breach by the school committee of its obligations under the pertinent legislation. To allow plaintiffs "* * * to bring this action without first pursuing the administrative remedy which the legislature intended they so employ, would be tantamount to redrafting the legislation under study." *Warren* v. *Lapan, supra,* at 176, 235 A.2d at 873-74. This, as in *Warren,* we refuse to do.

The defendants' appeal is sustained and the case is remitted to the Superior Court for further proceedings.

*Giovanni Folcarelli,* for plaintiffs.

*Adler, Pollock & Sheehan, Patrick A. Liguori,* for defendants.