Donald ROCH et al.

v.

J. Joseph GARRAHY, Governor of the
State of Rhode Island et al.

No. 79–288–Appeal.

Supreme Court of Rhode Island.

Aug. 29, 1980.

Stephen P. Erickson, Newport, for plaintiffs.

Dennis J. Roberts, II, Atty. Gen., Eileen G. Cooney, Sp. Asst. Atty. Gen., for defendants.

## OPINION

WEISBERGER, Justice.

This case comes before us on appeal from a judgment of the Superior Court dismissing the plaintiffs' action for declaratory and injunctive relief. The judgment indicates by its terms that the grounds for dismissal were: (1) lack of jurisdiction of the subject matter; (2) plaintiffs' lack of standing to raise the issue on which the complaint was based; and (3) failure to state a cause of action upon which relief can be granted.[1] The facts alleged in the complaint are as follows.

Plaintiff Donald Roch is chairman of the Rhode Island Republican State Central Committee. The three additional plaintiffs, all of whom are referred to as John Doe in the complaint, are alleged to be unknown Republican candidates for public office in elections to be held in 1979 and 1980. The defendants are the Governor, the Secretary of State, the General Treasurer of the State of Rhode Island, and the members of the Board of Elections appointed by the Governor pursuant to the provisions of G.L.1956 (1969 Reenactment) chapter 7 of title 17. The plaintiffs claim that the Governor has failed to comply with the mandate of § 17–7–1, as enacted by P.L.1979, ch. 313, § 2, in appointing the members of this board.[2] Specifically, plaintiffs complain that the members of the Board of Elections

1. The parties in this case did not order a transcript of the decision of the trial justice. Thus we derive the grounds for entry of judgment by examining the motion and the judgment without the benefit of the transcript of the oral decision.

2. General Laws 1956 (1969 Reenactment) § 17–7–1, as enacted by P.L.1979, ch. 313, § 2 and § 17–7–2, as enacted by P.L.1979, ch. 312, § 2,

are both pertinent to this controversy and read as follows:

"17–7–1. Legislative intent.–It is the intent of the general assembly that the board of elections be a board on which all the qualified electors of the state, regardless of their political identification or the lack thereof, will be eligible to serve. The governor, in making these appointments, and the senate, in confirming them, shall consider the abilities and integrity of the qualified electors

"do not meet the statutory requirement to be broadly representative of the population of the State of Rhode Island to wit: They are similar in the following respects:

"a. They are all members of the caucasian race

"b. They are all males

"c. Six out of the seven named Defendants reside in the City of Providence, and all seven are residents of Providence County.

"d. All seven of the Defendant members of the Board are members of the Roman Catholic Church.

"e. None of the seven members represent any of the major significant ethnic groups in the State of Rhode Island with the exception of the Irish–Americans and the Italo–Americans."

The plaintiffs claim further that this board is not representative of the citizens of this state since it does not include in its membership representatives of any political organization other than the Republican and Democratic parties; thus, it is not representative of the independent voters who make up a significant portion of the voting population of this state.

The plaintiffs argue that the Superior Court was in error in dismissing their complaint on each of the grounds set forth in the judgment. We shall consider these issues in order.

## JURISDICTION OF THE SUBJECT MATTER

■ The defendants contend that the subject matter of this action is political and as such is outside the jurisdiction of the courts. For this proposition they cite *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), and *McCarthy v. McAloon*, 79

R.I. 55, 83 A.2d 75 (1951). It is true that this court stated in *McCarthy* that political questions are not cognizable in courts of equity and indicated that "[i]n jurisdictions having distinct courts of law and equity it is generally recognized that equity is without jurisdiction to decide purely political questions." *Id.* at 60, 83 A.2d at 77. The term "jurisdiction," however, was used in the sense of appropriate exercise of jurisdiction or justiciability as opposed to lack of jurisdiction in the fundamental sense. *See La Petite Auberge, Inc. v. Rhode Island Commission for Human Rights*, 419 A.2d 274, at ———— (R.I., 1980); *Borozny v. Paine*, R.I., 411 A.2d 304 (1980); *Hartt v. Hartt*, R.I., 397 A.2d 518 (1979) (all distinguishing appropriate exercise of jurisdiction from lack of jurisdiction in the fundamental sense). The Supreme Court of the United States in *Baker v. Carr* recognized this distinction between subject–matter jurisdiction and justiciability. Mr. Justice Brennan's observations on this subject are instructive:

"The District Court was uncertain whether our cases withholding federal judicial relief rested upon a lack of federal jurisdiction or upon the inappropriateness of the subject matter for judicial consideration–what we have designated 'nonjusticiability.' The distinction between the two grounds is significant. In the instance of nonjusticiability, consideration of the cause is not wholly and immediately foreclosed; rather, the Court's inquiry necessarily proceeds to the point of deciding whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded. In the instance of lack of jurisdiction the cause either does not 'arise under' the Federal Constitution,

under consideration and their knowledge of and/or experience in the working of the election laws of the state. They shall strive to select a board whose membership shall be representative of all citizens of the state and of their diverse points of view.

"17–7–2. Composition of board.–There shall be, independent of every other department and agency of this state, a board of elections, consisting of seven (7) qualified electors of this state, of outstanding honesty and ability and none of whom shall hold any other public office or public employment (but no person shall be disqualified solely because he is a notary public), who shall be appointed by the governor with the [advice] and consent of the senate, as hereinafter provided."

laws or treaties (or fall within one of the other enumerated categories of Art. III, § 2), or is not a 'case or controversy' within the meaning of that section; or the cause is not one described by any jurisdictional statute." *Baker v. Carr,* 369 U.S. at 198, 82 S.Ct. at 700, 7 L.Ed.2d at 674.

■ When we apply this analysis to the case at bar, it is clear that the Superior Court has been granted jurisdiction under chapter 30 of title 9, G.L.1956 (1969 Reenactment), to render declaratory judgments, to construe statutes, and to determine "rights, status or other legal relations thereunder," § 9–30–2. In addition, the Superior Court has been granted broad equity powers under § 8–2–13, powers undoubtedly broader than those conferred upon federal district courts, which are essentially courts of limited jurisdiction. *Aldinger v. Howard,* 427 U.S. 1, 15, 96 S.Ct. 2413, 2420–21, 49 L.Ed.2d 276, 287 (1976); 13 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3522 at 44 (1975). There seems little question that in an appropriate case involving a party with adequate standing, the Superior Court could well consider a controversy in which the construction of a statute was at issue and the determination of compliance by the Chief Executive with an act of the General Assembly was in question. Thus we are of the opinion that the Superior Court in the instant case had jurisdiction of the subject matter.

## JUSTICIABILITY

■ Since the landmark decision of the Supreme Court in *Baker v. Carr, supra,* the Supreme Court of the United States has examined and decided many questions that under the older and more traditional view would have been considered to be political and thus not appropriately cognizable by the judiciary. *See, e. g., United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *Powell v. McCormack,* 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969); *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). Per-

suaded by these authorities, which considered whether interpretations by other branches of government of constitutional and statutory provisions were in accordance with the requirements of law, we believe that the question presented by this complaint was justiciable. The determination of whether the Governor has obeyed a statutory mandate in appointing members of such an important body as the Board of Elections comes well within the area of controversy where the statutes of this state provide discoverable and manageable standards for use by courts in determining the legality of an executive act. *See Baker v. Carr,* 369 U.S. at 226, 82 S.Ct. at 715, 7 L.Ed.2d at 691. The importance of the electoral process is central to the preservation of all other civil liberties.

> "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders,* 376 U.S. 1, 17, 84 S.Ct. 526, 535, 11 L.Ed.2d 481, 492 (1964).

Although this case does not deal with the right to vote or dilution thereof, it deals with an agency that serves as the guardian of the franchise. Since it is essentially the task of the Board of Elections to supervise the administration of election laws by local boards and generally to see that all of the laws of this state in respect to elections are faithfully and properly obeyed, with due regard to the rights of the electors and political candidates, a challenge to the legality of the composition of such a board is clearly a justiciable issue.

## STANDING

■ Under the guidance laid down in *Matunuck Beach Hotel, Inc. v. Sheldon,* R.I., 399 A.2d 489 (1979), we believe that the complaint contained sufficient allegations to establish standing on the part of plaintiffs. In that case, relying upon principles enunciated in *Rhode Island Ophthalmological Society v. Cannon,* 113 R.I. 16, 317 A.2d 124 (1974), we pointed out that

"the question of standing in the public interest area, as in other areas, should not center on the quantum of the public's interest, but on whether an unfavorable outcome of the controversy will adversely affect the public interest. * * * The line is not between a substantial injury and an insubstantial injury. The line is between injury and no injury." *Matunuck Beach Hotel, Inc.*, R.I., 399 A.2d at 494.

We cannot say that the head of a major political party, prospective candidates of that party, and the public at large would not suffer some injury in the event that the Governor fails to meet statutory standards in appointing members of the Board of Elections.

## FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

■ It was incumbent upon the Superior Court, in passing upon this issue, to accept all of the allegations of the complaint as true and to draw every reasonably favorable intendment therefrom and to sustain the complaint against challenge unless it could be demonstrated beyond a reasonable doubt that under no set of facts which might be proven in support thereof might a claim be made out upon which relief could be granted. *Redmond v. Rhode Island Hospital Trust National Bank*, R.I., 386 A.2d 1090, 1092 (1978); *Rosen v. Restrepo*, R.I., 380 A.2d 960 (1977); *Bragg v. Warwick Shoppers World, Inc.*, 102 R.I. 8, 227 A.2d 582 (1967). Applying this stringent standard to the facts of the case at bar, we are constrained to conclude that the trial justice was correct in granting the motion to dismiss pursuant to the terms of Rule 12(b)(6) of the Superior Court Rules of Civil Procedure.

An examination of the statute in question discloses that the Governor in making appointments to the Board of Elections, and the Senate in confirming them, "shall consider the abilities and integrity of the qualified electors under consideration and their knowledge and/or experience in the workings of the election laws of the state." The complaint does not challenge the abilities, integrity, or knowledge and/or experience of the appointees. It does not suggest that they are not qualified electors. The sole point of challenge lies in the alleged failure to obey that portion of the statute which provides that

"[t]hey shall strive to select a board whose membership shall be representative of all citizens of the state and of their diverse points of view." Section 17–7–1.

This language of the statute is clearly hortatory or directory rather than mandatory. We have held that in determining whether a statute is directory or mandatory, we must ascertain the legislative intent, *Tiverton v. Fraternal Order of Police, Lodge # 23*, 118 R.I. 160, 372 A.2d 1273 (1977), and its predominating purpose, *Atlantic Refining Co. v. Director of Public Works*, 98 R.I. 167, 200 A.2d 580 (1964). In applying this test to the statute in question, we must look at the word "shall" in context with the other words of the statute. The term "strive" is substantially a synonym for the word "try" or "attempt" and connotes the exercise of discretion as opposed to obedience to words of command. These words are not unlike the expression "having due regard" which has been construed as directory and not of mandatory significance. *See Lape v. Lape*, 99 Ohio St. 143, 124 N.E. 51 (1918).

■ This language indicates a mild exhortation by the Legislature to the Governor and Senate to strive or try for diversity in conjunction with other characteristics. There is utterly no indication that the Legislature intended even to suggest any particular type of diversity. The plaintiffs assume, without support from the language of the statute, that the Legislature intended geographic, ethnic, religious, sexual, and racial diversity, as well as political.[3]

---

**3.** It need not be emphasized that a board of seven members would impose severe limitations upon representative qualities in light of the numerous ethnic, religious, social, and political groups which would be identifiable within the populace of this state.

In the light of the basic purpose of this statute—to achieve the appointment of persons who would oversee the fair conduct of elections—we cannot read any such intention into this statute. Insofar as the Legislature might give directory guidance to consider diversity, it would expect the Governor in the exercise of his discretion to select elements of relevant diversity. There is no reason to believe that the Legislature would consider ethnic, religious, racial, or sexual characteristics to be in any way compelling or even relevant qualities in the conduct of fair elections. The Governor may have believed that the term "diverse" relates to political diversity (which to some extent has been achieved by the appointments according to the complaint) and diversity in business or professional backgrounds (upon which subject the complaint is silent). These directory exhortations are too vague and indefinite to be considered terms of command. They repose in the appointing and confirming authorities wide discretion to carry out the task of appointing persons who meet the broad guidelines of qualification. Under no circumstances in construing such a statute may the court substitute its judgment in this exercise of discretion for that of the Governor and the Senate. Thus the complaint, read with every reasonable intendment in favor of the plaintiffs, has failed to state a claim upon which relief could be granted.

Consequently, although we believe that the trial justice had jurisdiction of the subject matter, that the matter was justiciable, and that the plaintiffs had standing to bring the action, the trial justice was correct in dismissing the action pursuant to Super.R.Civ.P. 12(b)(6). Therefore, for the reasons stated, the plaintiffs' appeal is denied and dismissed, the judgment of the Superior Court is affirmed, and the case is remanded to the Superior Court.