DECISION
Before the Court for decision is Plaintiffs' request, pursuant to G.L. 1956 § 9-30-1 et seq., for declaratory relief construing the relevant provisions of Title 16 and Title 28 of the General Laws of Rhode Island as they affect the respective rights, status, and other legal relations between the East Providence School Committee (Committee) and the East Providence Education Association (Union). The Committee asks the Court to declare that it acted lawfully under Title 16, specifically G.L. 1956 § 16-2-9(d), which states "[n]otwithstanding any provisions of the general laws to the contrary . . . [t]he school committee of each school district shall be responsible for maintaining a school budget which does not result in a debt." According to the Committee, after reaching an impasse in negotiations with the Union, it was necessary to change certain terms and conditions of employment of the East Providence teachers to maintain a balanced budget and comply with § 16-2-9(d). The Union contends that § 16-2-9(d) does not empower the Committee to disregard the State Labor Relations Act (SLRA), G.L. 1956 § 28-7-1 et seq., or the Certified School Teachers' Arbitration Act (CSTAA), G.L. 1956 § 28-9.3-1. Jurisdiction is pursuant to § 9-30-2 of the Uniform Declaratory Judgment Act (UDJA).
 I Facts and Travel
The Committee and the Union have filed a joint stipulation of facts, which in part, is summarized below. The Committee is the governing body for the East Providence School Department (Department). The City of East Providence (the City), which runs on a November 1 — October 31 fiscal year, annually appropriates funds for the Committee to operate the Department. It also receives funding from the state and federal governments. The Committee employs approximately 500 part and full-time certified teachers. In October 2008, the Committee sued the City under state law, the "Caruolo Act," G.L. § 16-2-21.4, seeking an *Page 3 
additional appropriation of just under $3 million to defray the deficit incurred during fiscal year 2008. Other than filing the Complaint and Answer, no other pleadings have been filed or hearings held in connection with that matter, which remains unresolved (and likely moot).
The Union is the certified bargaining representative for the Department's certified teachers and has been for over forty years. In 2005, the Committee and the Union executed the most recent Collective Bargaining Agreement (CBA), covering the period of November 1, 2005 through October 31, 2008. Subsequent to the expiration of the term of the CBA, the Committee continued to provide salaries and benefits to the teachers pursuant to the terms of such CBA until January 5, 2009. On January 2, 2009, the Committee notified the Union that effective January 5,
2009, it would make certain unilateral changes to the terms and conditions of the teachers' employment pertaining to their salaries and certain benefits. (Jnt. Ex. 4.)
In accordance with these changes, the teachers' salaries for fiscal year 2008-2009 (FY 09) were reduced to fiscal year 2006-2007 levels. Additionally, changes were made to the teachers' health care benefits requiring them, inter alia, to contribute 20% of the monthly premium for their coverage. The Committee also made changes to the teachers' personal leave, longevity pay, and facilitator pay. Subsequent to the implementation of these changes, the Union filed an unfair labor practice charge against the Committee pertaining to the legality of such changes, which is now before the State Labor Relations Board (SLRB) as an unfair labor practice complaint, ULP — 5951. The SLRB has stayed ULP — 5951, pending the outcome of this action.
On March 12, 2009, the Committee filed this action against the Union seeking declaratory relief under the UDJA.See § 9-30-1 et seq. The Committee twice amended the Complaint to add additional parties in accordance with § 9-30-11. Prior to the commencement of the evidentiary hearings, the parties filed Joint Exhibits and Stipulated Facts (SF). The Court *Page 4 
conducted evidentiary hearings and heard testimony from the Committee's Chief Operating Officer. The Union presented no witnesses.
The Court must now resolve the interplay between Title 16, relating to the powers and duties of school committees and the collective bargaining requirements of Title 28, and determine whether the Committee acted lawfully in unilaterally implementing the salary and benefit changes on January 5, 2009.
 II Standard of Review
A declaratory judgment "is neither an action at law nor a suit in equity but a novel statutory proceeding. . . ." Northern TrustCo. v. Zoning Bd. of Review of Town of Westerly, 899 A.2d 517,520, n. 6 (R.I. 2006) (quoting Newport Amusement Co. v.Maher, 92 R.I. 51, 53, 166 A.2d 216, 217 (1960)). The purpose of the UDJA is "to allow the trial justice to `facilitate the termination of controversies.'" Bradford Assocs. v. R.I. Div. ofPurchases, 772 A.2d 485, 489 (R.I. 2001) (citations omitted). Thus, the UDJA grants broad jurisdiction to the Superior Court to "declare rights, status, and other legal relations whether or not further relief is or could be claimed." Section 9-30-1. Therefore, it is the function of the Court "to undertake fact-finding and then decide whether declaratory relief is appropriate." Town ofBarrington v. Williams, 972 A.2d 603, 608 (R.I. 2009) (citingProvidence Lodge No. 3, Fraternal Order of Police v. ProvidenceExternal Review Authority, 951 A.2d 497, 502 (R.I. 2008)).
 III Discussion
This action concerns an issue of first impression regarding whether the mandate in § 16-2-9(d) — requiring that "[n]otwithstanding any provisions of the general laws to the contrary . . . [t]he school committee of each school district shall be responsible for maintaining a school *Page 5 
budget which does not result in a debt" — allows a school committee to disregard pertinent provisions of the SLRA and the CSTAA. According to the Committee, the General Assembly's use of the word "notwithstanding" in § 16-2-9(d) exempts the Committee from complying with any laws that would result in its maintaining a school budget with a deficit. The Union challenges the Committee's request for declaratory relief arguing that such relief requires this Court to determine whether the Committee's actions constituted unfair labor practices, an issue it maintains is within the exclusive original jurisdiction of the SLRB. Additionally, the Union contends that even if this Court does have proper subject matter jurisdiction over this matter, § 16-2-9(d) does not conflict with the SLRA and the CSTAA or allow a school committee to disregard its provisions.
 A Subject Matter Jurisdiction
The threshold issue before this Court is whether the Committee's request for declaratory relief is within the jurisdiction of this Court under the UDJA. Section 9-30-1 et seq. The Committee has asked this Court to declare, inter alia, that it "acted lawfully in changing the terms and conditions of teachers' employment in an effort to reduce debt and comply with the balanced budget mandates of Title 16 after exhausting the statutory impasse resolution procedures set forth in Title 28." (Compl. 16.) The Union contends that this Court lacks subject matter jurisdiction to make such a determination, which it argues is within the exclusive jurisdiction of the SLRB.
Generally, exclusive original jurisdiction in unfair labor cases does rest in the SLRB under the SLRA, § 28-7-21, and the Superior Court does not have jurisdiction until administrative remedies have been exhausted and an appeal has been taken pursuant to the provisions of the Administrative Appeals Act, G.L. 1956 § 42-35-15. MacQuattie v. Malafronte, *Page 6 779 A.2d 633, 635 (R.I. 2001) (citing Paton v. Poirier,109 R.I. 401, 406, 286 A.2d 243, 245 (1972)). However, in certain limited circumstances, a party may seek declaratory relief in the Superior Court. Instituting a declaratory judgment action after a party has begun to seek relief at an administrative level is permissible when the complaint seeks a declaration that the challenged ordinance or rule is facially unconstitutional or in excess of statutory powers, or that the agency or board has nojurisdiction. Kingsley v. Miller, 120 R.I. 372,388 A.2d 357 (R.I. 1978) (emphasis added). The rationale is that it would be futile for a plaintiff to seek administrative relief from a board of review that it argues lacks authority over the contested matter.See Taylor v. Marshall, 119 R.I. 171, 180, 376 A.2d 712,717 (1977). Here, the Committee argues that the SLRB does not have jurisdiction over ULP — 5951 because Title 16 contains a specific statutory mandate requiring the Committee to maintain a school budget which does not result in a debt "[n]otwithstanding any provisions of the general laws to the contrary." Section 16-2-9(d).
However, even if the SLRB does have jurisdiction over ULP — 5951 and administrative relief is appropriate, the UDJA grants the Superior Court the power to declare the rights, status, and other legal relations of any party affected by a statute "whether or not further relief is or could be claimed." See §§ 9-30-1 — 2. The UDJA grants broad jurisdiction to the Superior Court to determine the rights of any party that may arise under a statute, not in its appellate capacity, but as part of its original jurisdiction.Canario v. Culhane, 752 A.2d 476, 479 (R.I. 2000) (citingRoch v. Garrahy, 419 A.2d 827, 830 (R.I. 1980)). Pursuant to its powers granted under § 9-30-2, [1] the Court has jurisdiction to declare the rights of the Committee as affected by the *Page 7 
construction of Title 16 and its direct interaction with Title 28, regardless of the possibility that administrative remedies, such as a SLRB proceeding, might also be available. Taylor v.Marshall, 119 R.I. 171, 180, 376 A.2d 712, 717 (1977) (citing Super. R. Civ. P. 57). Accordingly, the Court has jurisdiction to hear this declaratory judgment action and now will address whether the SLRB does in fact have jurisdiction over ULP — 5951.
The Union argues that the Court lacks subject matter jurisdiction over this matter as well as ULP — 5951 because the Committee is asking the Court to resolve an unfair labor practice which should be heard by the SLRB. According to the Union, whether or not the Committee was legally required to continue adherence to the CBA while it negotiated with the Union for a successor agreement and whether the Committee engaged in good faith collective bargaining for such a successor agreement are unfair labor practice issues within the exclusive jurisdiction of the SLRB. However, the Committee contends that these issues arise under Title 16 and since the SLRB only has the power to adjudicate unfair labor practices under Title 28, it lacks jurisdiction to decide ULP — 5951.
As discussed supra, exclusive original jurisdiction in unfair labor matters rests in the SLRB, and the Superior Court does not have jurisdiction until administrative remedies have been exhausted. MacQuattie, 779 A.2d at 635. However, the SLRB may exercise only those powers either expressly, or by reasonable implication, conferred upon it by the General Assembly. Liguoriv. Aetna Cas. Sur. Co., 384 A.2d 308, 312 (R.I. 1978). The General Assembly has conferred jurisdiction upon the SLRB to adjudge disputes over unfair labor practices and questions over union representation. See §§ 28-7-13, 21. However, here the parties' dispute centers on a statutory provision, which according to the Committee is a statutory mandate for the Committee to maintain a balanced budget. Administrative agencies are bound by statutory *Page 8 
schemes and a decision or award is invalid if the decision or award disregards a statutory scheme. See State Dep't ofCorrections v. Rhode Island State Labor Relations Board,703 A.2d 1095, 1097 (R.I. 1997) ("a practice of a board or agency cannot overcome or negate a statutory imperative"); State ofRhode Island v. R.I. Alliance of Social Service Employees, Local580, SEIU, 747 A.2d 465, 69 (R.I. 2000) ("neither a department of state government nor a union of its employees . . . can agree to relieve the parties . . . of their obligation to comply with applicable state law"). Accordingly, a determination of what actions are lawful and possibly even required under § 16-2-9(d) falls outside the jurisdiction to determine unfair labor practices afforded to the SLRB under Chapter 28.See § 28-7-13(6), (10).
However, this Court is mindful that in its unfair labor practice charge to the SLRB, resulting in the issuance of ULP — 5951, the Union alleged that the Committee's actions constituted "a refusal to bargain, bargaining in bad faith, intimidation and coercion of members of the bargaining unit in the exercise of rights, in violation of R.I.G.L. § 28-7-13(6) (10)." Further, § 16-2-9(b) does state that "[n]othing in this section shall be deemed to limit or interfere with the rights of teachers and other school employees to collectively bargain pursuant to chapters 9.3 and 9.4 of title 28 or to allow any school committee to abrogate any agreement reached by collective bargaining." Therefore, the issue of whether during negotiations leading up to the Committee's actions of January 2, 2009, the Committee refused to bargain or bargained in bad faith would be questions initially to be resolved by the SLRB.
 B Statutory Interpretation
The focus of this action is the meaning of § 16-2-9(d) and its relationship with relevant provisions of Title 28, specifically § 28-7-13 and § 28-9.3-1. According to the Committee, Title *Page 9 
16 contains a clear statutory mandate requiring school committees to adopt and maintain a balanced budget.See § 16-2-9(d)-(f). The Committee emphasizes that the specific language of § 16-2-9 and Title 16 as a whole prohibit school committees from operating with an unbalanced budget.See §§ 16-2-11(c), 16-2-18, 16-2-21(b)-(c),16-2-21.4(a),16-9-1. However, the Union insists that the subject provisions do not concern the same subject matter, and therefore, as a matter of law, there is no inherent conflict between § 16-2-9(d) and the pertinent provisions of the SLRA and the CSTAA.
Section 16-2-9 relates to the various powers and duties of school committees, and subsection (d) specifically states "[t]he school committee of each school district shall be responsible for maintaining a school budget which does not result in a debt." Such a responsibility is emphasized in the following subsection which requires a school committee to "adopt a budget as may be necessary to enable it to operate without incurring a debt." Section 16-2-9(e). Further, subsection (f) requires a school committee with knowledge of a potential or actual over expenditure or revenue deficiency to submit a statement of its "plan for corrective actions necessary to meet the requirements of subsection (d)." Section 16-2-9(f). Moreover, § 16-2-9(d) expressly and significantly states that subsections (d) through (f) of § 16-2-9 shall apply "[n]otwithstanding any provisions of the general laws to the contrary."
The other statutory provisions pertinent to this action fall within Title 28, which concerns labor and labor relations. Section 28-9.3-1 of the CSTAA, provides "certified public school teachers the right to organize, to be represented, to negotiate professionally, and to bargain on a collective basis with school committees covering hours, salary, working conditions, and other terms of professional employment." Additionally, such collective bargaining, and specifically what is prohibited during the process as an unfair labor practice, are governed by § 28-7-13. The *Page 10 
resulting conflict between the right of teachers to collectively bargain and the duty of a school committee to maintain a balanced budget is the focus of the Court's analysis.
When interpreting a statute, the ultimate goal of the Court is to give effect to the General Assembly's intent. State v.Andujar, 899 A.2d 1209, 1215 (R.I. 2006). In doing so, the Court applies the well-established rule of construction that when the language of a statute is clear and unambiguous, there is no room for statutory construction and a reviewing court "must enforce the statute as written by giving the words of the statute their plain and ordinary meaning." State v. Sivo, 925 A.2d 901, 916 (R.I. 2007). Further, the Court presumes that the General Assembly intended to attach a significant meaning to every word, sentence, or provision of a statute. Champlin's Realty Associates, L.P. v.Tillson, 823 A.2d 1162, 1165 (R.I. 2003).
The use of the word "notwithstanding" in § 16-2-9(d) is extremely significant. It is well-settled that the Legislature is "presumed to know the state of existing law when it enacts or amends a statute."Simeone v. Charron, 762 A.2d 442, 446 (R.I. 2000) (citingProvidence Journal Co. v. Rodgers, 711 A.2d 1131, 1134 (R.I. 1998)). In 1991, well after the enactments of §§ 28-7-13 and28-9.3-1, [2] the Legislature amended § 16-2-9 to include subsection (d) and mandate that school committees maintain a balanced budget "[n]otwithstanding any provisions of the general laws to the contrary." Further, when a statute does not define a word, courts often apply the common meaning as given by a recognized dictionary. Defenders of Animals, Inc. v. Department ofEnvironmental Management, 553 A.2d 541, 543 (R.I. 1989);see also 3A Sutherland StatutoryConstruction, § 75.06.
Our Supreme Court has previously discussed the meaning of the term "notwithstanding" when used in a statute. The Court applied the meaning from an earlier edition of The American *Page 11 Heritage Dictionary which defined "notwithstanding" as meaning "regardless of hindrance by." Defenders of Animals, Inc., 553 A.2d 543. Similarly, the current edition of that reference work defines "notwithstanding," when used as a conjunction, as is the case here, as meaning "[i]n spite of the fact that; although."The American Heritage Dictionary of the English Language
1203-04 (4th ed. 2000); see alsoPlanned Environments Management Corp. v. Robert, 966 A.2d 117,123 (R.I. 2009). Because the Legislature is presumed to know the state of existing law prior to the amendment of § 16-2-9 and to intend each word of the amended statute to have meaning, this Court can only construe the word "notwithstanding" so as to allow the Committee to disregard any general laws that require it to adopt and maintain an unbalanced budget.
Lending further support to this construction is language found throughout pertinent provisions of Title 16. Under § 16-2-18, the entire care, control, and management of all the public school interests of the several cities or towns are vested in their respective school committees, which shall accordingly "maintain a balanced school budget" and pay such associated expenses "provided, that these expenses shall not in any fiscal year exceed the total of all revenue appropriated by the state or city or town" and "that in no fiscal year shall a deficit be permitted for school operations." Similarly, § 16-2-21(b)-(c) provides:
 "(b) If the amount appropriated by the town meeting, the city or town council, or budget referendum is either more or less than the amount recommended and requested by the school committee, the school committee shall, within thirty (30) days after the appropriation is made, amend its estimates and recommendations so that expenses are no greater than the total of all revenue appropriated by the state or town or provided for public schools under the care, control, and management of the school committee.
 (c) Only a school budget in which total expenses are less than or equal to appropriations and revenues shall be considered an adopted school budget. (emphasis added)." *Page 12 
Additionally, under § 16-2-21.4(a), whenever a school committee "determines that its budget is insufficient to comply with the provisions of §§ 16-2-21, 16-7-23, or 16-7-24, the city, town, or regional school committee shall adhere to the appropriated budget."
Moreover, when recently confronted with these same statutory provisions, our Supreme Court found that based on the language of chapter 2 of Title 16, "it is clear that the General Assembly intended school committees to amend their budgets, request waivers, and request additional appropriations from their host municipalities at the first indication of a possible or actual deficit."School Committee of City of Cranston v. Bergin-Andrews,984 A.2d 629, 643-44 (R.I. 2009). Further, the Court emphasized that the "General Assembly's intent to encourage expeditious action in instances of potential school deficit spending is both practical as a matter of public policy and indisputable as a matter of statutory construction." Id. at 644. In light of the language throughout chapter 2 of Title 16, and given that it is within the sole discretion of the General Assembly "`to adopt all means which it may deem necessary and proper' in the promotion of public schools," the Court is satisfied that the General Assembly intended school committees to amend their school budgets to avoid operating with a deficit. City of Pawtucket v. Sundlun, 662 A.2d 40, 50
(R.I. 1995)
However, this Court is mindful that when performing its duty of statutory interpretation, the Court must consider the entire statute as a whole, and individual sections must be considered in the context of the entire statutory scheme. Planned EnvironmentsManagement Corp. v. Robert, 966 A.2d 117, 122 (R.I. 2009) (citingIn re Brown, 903 A.2d 147, 149 (R.I. 2006); seealso 2A Sutherland StatutoryConstruction, § 46:5. The Union argues that subsection (d) should not be interpreted as creating an exception to the Committee's duties under the SLRA and the CSTAA, especially in the context § 16-2-9(b). The Committee contends that it is not arguing *Page 13 
that it has an unfettered right to refuse to engage in the process of collective bargaining or to disregard binding collective bargaining agreements. Rather, it maintains that it had a duty to comply with § 16-2-9(d) once the CBA had expired and it had reached an impasse in bargaining with the Union.
Section 16-2-9(b) states that nothing in § 16-2-9 "shall be deemed to limit or interfere with the rights of teachers and other school employees to collectively bargain pursuant to chapters 9.3 and 9.4 of Title 28 or to allow any school committee to abrogate any agreement reached by collective bargaining." As discussedsupra, subsection (d) requires a school committee to maintain a balanced school budget despite any laws to the contrary.See § 16-2-9(d). This Court finds that the language in subsection (b) does not conflict with or negate its interpretation of the mandate in § 16-2-9(d). Under the language of § 16-2-9 a school committee must bargain in good faith with certified public school teachers in accordance with Title 28 and honor current collective bargaining agreements. However, under a narrow set of circumstances, when such collective bargaining negotiations have reached an impasse and there is no longer a valid collective bargaining agreement, a school committee must comply with the mandate in subsection (d) and avoid maintaining a school budget that results in debt. Id.
Given the Court's interpretation of § 16-2-9(d), it is necessary to highlight the status of negotiations between the parties at the time of the changes to the teachers' salaries and benefits. In August, the parties began negotiations to establish a successor agreement to the CBA, which was due to expire on October 31, 2008. (6/30/09 Tr. 133.) On September 15, 2008, the Committee sent a letter to the Union requesting that any and all unresolved contractual disputes be submitted to arbitration. (Ex. IX.) The parties then had six more negotiation sessions during late September and October, at which a mediator was present. (6/30/09 Tr. 135-36.) *Page 14 
Subsequently, the parties proceeded to interest arbitration on essentially all substantive contractual issues with hearings on four days during the month of November. (6/30/09 Tr. 137.) However, on December 30, while the Union voted to accept and adhere to the terms of the Arbitration Award, the Committee voted to reject all monetary terms of the Arbitration Award. (Jnt. Ex. 12-14.) Taking into account that negotiations between the parties occurred over a period of several months without agreement and that the parties failed to reach an agreement over the Arbitration Award, the Court finds that the parties have certainly reached the point of impasse.
The Court must also discuss the force and legal effect of the CBA between the Committee and the Union. According to the Union, the Committee had a duty to adhere to the terms and conditions of the CBA until a new agreement is reached. The Union argues that the duty to maintain the terms and conditions of employment set out in an expired contract is a statutory duty derived from the obligation to bargain in good faith. However, the Committee counters that the CBA ceased to have any legal force or effect after the expiration of its three year term on October 31, 2008.
Although the Union contends that the Committee was under a statutory duty to continue to adhere to the terms and conditions of the expired CBA until a successor agreement was realized, the Court disagrees. Title 28 does not contain such a mandate pertaining to school teachers' labor contracts, and in fact under § 28-9.3-4, "no contract shall exceed the term of three (3) years." Further, when previously discussing the effect of an expired contract this Court found it to be no longer valid and cited to Providence TeachersUnion v. Providence School Bd., 689 A.2d 388 (R.I. 1997).City of Cranston v. Teamsters Local 251, PM 09-1518, July 22, 2009, Silverstein, J. In Providence Teachers, when discussing the effect of a general arbitration *Page 15 
clause in an expired contract, the Court stated that "[a]n expired contract has by its own terms released all its parties from their respective contractual obligations, except obligations already fixed under the contract but as yet unsatisfied." Id. at 393 (quoting Litton Financial Printing Division v. NLRB,501 U.S. 190, 206 (1991)). Here, the CBA by its terms expired prior to the implementation of the disputed salary and benefits changes. Therefore, the Court finds that the CBA was no longer binding and the Committee did not "abrogate any agreement reached by collective bargaining." See § 16-2-9(b).
 C Disputed Changes
In order to determine whether or not the Committee acted lawfully in changing the terms and conditions of teachers' employment in an effort to balance the budget, the Court needs to determine if the Committee was facing an actual deficit. According to the Union, the Committee has continually misrepresented its FY 09 expenses. The Union claims that the Committee's estimated expenses for teacher salaries and benefits were based upon 29 more teachers than were actually employed by the Committee at that time, which allegedly should have reduced the estimated deficit from over $4 million to only $1,611,720. Additionally, the Union alleges that after reviewing all of the adjustments to the FY 09 budget, the Committee's total revenues actually exceeded its expenditures by over $8 million even before it implemented the teachers' salary and benefit changes. However, the Committee contends that regardless of what occurred during FY 09, as of January 5, 2009, the Committee's estimated deficit for FY 09 was over $4 million. The Committee also argues that nothing in the record establishes that it would end FY 09 with a multimillion dollar surplus.
Consistent with this Court's interpretation of the mandate in § 16-2-9(d), in order for the Committee's actions to be lawful, at the time the Committee made such changes, it must have *Page 16 
been facing a budget deficit. The Committee submitted into evidence an independent audit of the Department and the City for the 2008 fiscal year. (Pl. Ex. II.) The audit reveals that at the close of fiscal year 2008, the Department was a facing a deficit of over $5 million. (Pl. Ex. II, 17.) Further, the evidence shows that in August 2008, the Committee requested an appropriation from the City of $51,748,762 for FY 09, a $9,423,66 or 22.26% increase over the City's prior year appropriation. (Jnt. Ex. 5 at 4; SF ¶ 13.) Despite the Committee's request, the City appropriated $42,725,086, $400,000 or .95% over its prior year appropriation. (Jnt. Ex. 6, 7.) Moreover, the parties even have stipulated to the fact that as of January 5, 2009, the estimated deficit facing the Committee for FY 09 was over $4 million. Accordingly, the Court recognizes that as of January 5, 2009, the Committee was facing a financial crisis with an unbalanced budget exhibiting a multimillion dollar deficit.
The Union has continually argued that there were other avenues that the Committee could have taken to reduce the FY 09 deficit. However, this Court remains mindful that under § 16-2-9 the Committee is vested with the entire care, control, and management of the interests of the East Providence public schools. Further, under the same provision the Committee has both the power and the duty to adopt a school budget. See § 16-2-9(a)(9). Accordingly, this Court will not discuss whether the changes to the teachers' salary and benefits were the only or even the best possible way to comply with the balanced budget mandate of § 16-2-9(d). However, this Court does note that the parties stipulated that the teachers' salaries and benefits consumed 63% of the Committee's total revenue from all sources for FY 09. (SF ¶ 16.) Therefore, given the mandate in § 16-2-9(d) that a school committee "shall be responsible for maintaining a school budget which does not result in a debt" and the evidence before this Court that the Committee was, in *Page 17 
fact, facing a debt for FY 09, this Court declares that the Committee acted lawfully under Title 16 by implementing the teachers' salary and benefit changes.
In connection with this finding, the Committee has also asked this Court to declare that the SLRB lacks jurisdiction to order the Committee to spend any money that has not been allocated to it by the City or that would result in the Committee violating the balanced budget mandates set forth in Title 16. As discussedsupra, the issue of whether during negotiations leading up to the Committee's actions of January 2, 2009, the Committee refused to bargain or bargained in bad faith would be questions initially to be resolved by the SLRB. The Court is mindful that when deciding such questions, the SLRB is empowered under § 28-7-22 to issue orders and award the relief it deems to be appropriate. However, our Supreme Court has cautioned that "[n]o state official by administrative action can affect the substantive rights of parties as they have been set forth by an affirmative act of the general assembly."Little v. Conflict of Interest Commission of Rhode Island,121 R.I. 232, 236, 397 A.2d 884, 887 (1979). Further, as indicatedsupra, administrative agencies are bound by statutory schemes and a decision or award is invalid if the decision or award contravenes a statutory scheme. State Dep't of Corrections,703 A.2d at 1097 (citing Lerner v. Gill, 463 A.2d 1352, 1358
(R.I. 1983)). While the Court will not attempt to contravene the power of the SLRB under § 28-7-22 by declaring that it lacks jurisdiction to order particular relief, the Court will emphasize that the "practice of a board or agency cannot overcome or negate a statutory imperative" such as the one found in § 16-2-9(d).Id.
 IV Conclusion
Accordingly, this Court finds and declares that the Committee, after exhausting the statutory impasse resolution procedures set forth in Title 28, acted lawfully in changing the terms *Page 18 
and conditions of the teachers' employment in an effort to comply with the balanced budget mandate in § 16-2-9(d). It is clear from the language in chapter 2 of Title 16 that the Legislature intended school committees to maintain a balanced budget "notwithstanding any provisions of the general laws to the contrary." Although the Court does not find a conflict between § 16-2-9(d) and the relevant provisions of Title 28, at least in limited circumstances when the parties have reached an impasse in negotiations and their actions are not governed by a binding collective bargaining agreement, a committee can make unilateral changes when faced with an actual deficit.
Additionally, the Court declares that the CBA between the Union and the Committee was no longer of any force or legal effect after its expiration on October 31, 2008. The CBA by its terms expired prior to the implementation of the disputed salary and benefits changes. Further, under § 28-9.3-4, a teachers' labor contract cannot exceed a term of three years. Therefore, the CBA was no longer in effect as a contract between the parties.
The Court further declares that the SLRB lacks jurisdiction over ULP — 5951, in so far as it pertains to a determination of what actions are lawful and possibly even required under Title 16 and specifically § 16-2-9(d). While the General Assembly has conferred jurisdiction upon the SLRB to decide disputes over unfair labor practices, here the parties' dispute is outside that jurisdiction and centers on the Committee's actions under Title 16 and not § 28-7-13. However, this Court leaves to the determination of the SLRB, if necessary, whether during negotiations leading up to the Committee's actions of January 2, 2009, the Committee refused to bargain or bargained in bad faith.
The Committee has also asked the Court to declare that the SLRB lacks jurisdiction to order the Committee to spend any money that has not been allocated to it by the City or that *Page 19 
would result in the Committee violating the balanced budget mandates in Title 16. In relation to such request, the Court directs the parties to refer to the paragraph preceding Section IV Conclusion, which discusses the powers of the SLRB.
Counsel may present an agreed upon Order consistent with the Decision rendered herein or competing Orders if one cannot be agreed upon.
[1] Section 9-30-2 reads as follows:
 "Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder."
[2] Section 28-7-13 was enacted in 1941, P.L. 1941 ch. 1066 § 5, and amended in 1979, P.L. 1979 ch. 126 § 1. Section 28-9.3-1 was enacted in 1966. P.L. 1966 ch. 146 § 1.